## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

WAFEEK. A. SHALABI, )
                       Plaintiff, )
                               )
     v. )
                               )
**THE HUNTINGTON NATIONAL BANK**, )
a federally chartered national banking )
association, and **THE HUNTINGTON** )
**MORTGAGE COMPANY**, an Ohio corporation, )
and **PIERCE & ASSOCIATES, P.C.**, an Illinois )
professional corporation, )
                    Defendants. )

01C 2959

DOCKETED
APR 2 5 2001

JUDGE HOLDERMAN
MAGISTRATE JUDGE ROSEMOND

FILED · ED4
01 APR 25 PM 2:19
CLERK U.S. DISTRICT COURT

### NOTICE OF REMOVAL

NOW COMES Defendant The Huntington National Bank ("Huntington Bank") and Defendant The Huntington Mortgage Company ("Huntington Mortgage"), by and through undersigned counsel, pursuant to 28 U.S.C. § 1441, *et seq.*, and 28 U.S.C. § 1332, and file this Notice of Removal, showing this Court as follows:

    1.     On April 2, 2001, Plaintiff Wafeek A. Shalabi commenced an action against the Defendants in the Circuit Court of Cook County, Illinois, County Department, Law Division, under the caption *Shalabi v. The Huntington National Bank, et al,* (01 L 003879) (hereinafter, the "Law Division Action"), seeking damages against the above-named Defendants in connection with a home mortgage and Note that Mr. Shalabi executed with Huntington Mortgage. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of Mr. Shalabi's Complaint and Summons in the Law Division Action, dated April 2, 2001, are attached hereto as Exhibit A.

    2.     Defendant Huntington Bank and Defendant Huntington Mortgage further state that, since 1996, a separate action has been pending before the Chancery Division of the Cook

County Circuit Court, under the caption *The Huntington Mortgage Company v. Shalabi* (96 CH 6877), in which Huntington Mortgage is seeking to collect upon the same Note by foreclosing upon the same mortgage (hereinafter, the "Mortgage Foreclosure Action"). A bench trial in the Mortgage Foreclosure Action is scheduled for May 1, 2001. On April 19, 2001, on the eve of that bench trial, Mr. Shalabi voluntarily dismissed several counterclaims that he was asserting as setoffs in that Mortgage Foreclosure Action, because he had already refiled them as part of the Law Division Action in an effort to obtain a jury trial. Mr. Shalabi has also sought a postponement of the upcoming bench trial.

3. Two years ago, Mr. Shalabi had filed another action in the Circuit Court of Cook County, alleging some of the same claims that are now pled in the Law Division Action. That case, captioned *Shalabi v. The Huntington Mortgage Company* (99 L 07247), was filed on July 1, 1999, and it was removed to this Court on July 29, 1999, where it was captioned *Shalabi v. The Huntington Mortgage Company* (99 CV 4971) and assigned to Judge James Moran. On July 30, 1999, Mr. Shalabi filed a Notice of Voluntary Dismissal Pursuant to Rule 41 of the Federal Rules of Civil Procedure, and the case was terminated. Mr. Shalabi then pled the claims from that lawsuit as counterclaims in the Mortgage Foreclosure Action, and he recently voluntarily dismissed those counterclaims, as described in Paragraph 2, above.

4. The Complaint and Summons in the Law Division Action (Exhibit A, hereto) were filed on April 2, 2001. None of the Defendants received that Complaint or the Summons before those documents were filed. Accordingly, this Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which requires the notice of removal to be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading.

5.      This is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, because the parties are citizens of different States and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

a.      Mr. Shalabi is a resident of the State of Illinois.  He resides in Orland Park, Illinois (Exhibit A, ¶ 1).

b.      Defendant Huntington Bank is a national banking association, organized under the laws of the State of Ohio, with its principal place of business in Columbus, Ohio (Exhibit A, ¶ 2; Exhibit B).

c.      Defendant Huntington Mortgage is an Ohio corporation with its principal place of business in Columbus, Ohio (Exhibit A, ¶ 3; Exhibit C).

d.      Defendant Pierce & Associates, P.C. is an Illinois professional corporation with its principal place of business in Chicago, Illinois (Exhibit A, ¶ 4; Exhibit D).  For removal jurisdiction purposes, Defendant Pierce & Associates, P.C. may be ignored because it has been fraudulently joined for the purposes of defeating this Court's diversity jurisdiction.  The only claim brought against Defendant Pierce & Associates, P.C. is an assertion that it is somehow liable under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 I.L.C.S. 505/1, *et seq.*, but the claim does not identify anything that Defendant Pierce & Associates, P.C. actually did that violated that statute (see Exhibit A, pp. 15-16).   Indeed, the only involvement of Defendant Pierce & Associates, P.C. is that it is the former counsel for Huntington Mortgage in the Mortgage Foreclosure Action and in litigation over the real estate taxes on Mr. Shalabi's house (*see, e.g.*, Exhibit A,      ¶ 5 at pg. 2, ¶ 19 at pg. 4, ¶ 60 at pg. 16).   In these

circumstances, the Court may look at the face of the Complaint in the Law Division Action and determine that Defendant Pierce & Associates, P.C. has been fraudulently joined. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73-74 (7th Cir. 1992); *Jacobsen v. Ford Motor Company*, 1999 U.S. Dist LEXIS 16213 (N.D. Ill. 1999) (Exhibit E). Where there are no particularized allegations of what a defendant did to violate the Illinois Consumer Fraud Act, the Court may hold that the defendant has been fraudulently joined and may disregard that defendant when considering its own removal jurisdiction. *Jacobsen*, 1999 U.S. Dist. LEXIS 16213 at *14, *15 (Exhibit E at Pg. 8 of 15). Moreover, a lawyer may not be held liable under the Illinois Consumer Fraud Act for serving as a lawyer for a party in a lawsuit, because the practice of law is not covered by that statute. *Zayaned v. Gertler & Gertler, Ltd.*, 2000 U.S. Dist. LEXIS 5827 (N.D. Ill. 2000) (Exhibit F); *Pucci v. Santi*, 711 F. Supp. 916, 926 (N.D. Ill. 1989). Because Mr. Shalabi has no chance of succeeding on his claim against Defendant Pierce & Associates, P.C., the Court may find that Mr. Shalabi fraudulently joined that defendant. *Poulos*, 959 F.2d at 73.

e.   Mr. Shalabi has alleged an amount in controversy here that exceeds $75,000.00, exclusive of interest and costs:

    i.   In Count I of his Complaint, Mr. Shalabi seeks compensatory damages in the amount of $62,934.39, punitive damages in excess of $50,000.00, and attorneys' fees;

    ii.   In Count II of his Complaint, Mr. Shalabi seeks compensatory damages in the amount of $62,934.39, punitive damages in excess of $50,000.00, and attorneys' fees; and

    iii.   In Count III of his Complaint, Mr. Shalabi seeks compensatory damages in the amount of $62,934.39, punitive damages in excess of $50,000.00, and attorneys' fees.

*See* Exhibit A at pp. 13, 14 and 16.

6.      Pursuant to 28 U.S.C. §1441, therefore, Defendant Huntington Bank and Defendant Huntington Mortgage may remove this action to this Court.

7.      Pursuant to 28 U.S.C. § 1446(d), written notice of removal is being filed with the Circuit Court of Cook County and will be given simultaneously herewith to Mr. Shalabi's counsel.

WHEREFORE, Defendant The Huntington National Bank and Defendant The Huntington Mortgage Company hereby petition to remove this case from the Circuit Court of Cook County, Illinois, to this United States District Court for the Northern District of Illinois, Eastern Division, and request that this Court assume full jurisdiction over the case herein as provided by law.

Dated: April 25, 2001

Respectfully submitted,

THE HUNTINGTON NATIONAL BANK AND
THE HUNTINGTON MORTGAGE COMPANY

By: _____
                One of Their Attorneys

Timothy J. Carey
Thomas A. Doyle
Eric J. Gribbin
LOVELLS
330 North Wabash Avenue
Suite 1900
Chicago, Illinois 60611
312.832.4400

# EXHIBIT  A

Apr-16-01  03:34pm  From-Huntington Natl Bank Legal Dept      614-480-5404      T-452  P.003/020  F-275

| 2220 - Not Served | 2221 - Not Served |
|---|---|
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS-SUMMONS |

(Rev. 9/3/99) CCG 0001

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW _____ DIVISION

(Name all parties)

WAFEEK A. SHALABI, a Bachelor a/k/a
WALLY SHALABI,              Plaintiff

No. _____

01L 003879
CALENDAR E
TORT-INTENTIONAL

v.

THE HUNTINGTON NATIONAL BANK, a federally
chartered national banking association;
THE HUNTINGTON MORTGAGE COMPANY, an Ohio
corporation; and PIERCE & ASSOCIATES, PC,
an Illinois professional corporation,
                     Defendants.  **SUMMONS**

To each defendant:  SEE ATTACHED SERVICE LIST

        YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is
hereto attached, or otherwise file your appearance, and pay the required fee, in the office of the Clerk of this Court at
the following location:

☒☒☒ Richard J. Daley Center, 50 W. Washington, Room ___801___ , Chicago, Illinois 60602

| ☐ District 2 - Skokie | ☐ District 3 - Rolling Meadows | ☐ District 4 - Maywood |
|---|---|---|
| 5600 Old Orchard Rd. | 2121 Euclid | 1500 Maybrook Ave. |
| Skokie, IL 60077 | Rolling Meadows, IL 60008 | Maywood, IL 60153 |

| ☐ District 5 - Bridgeview | ☐ District 6 - Markham |
|---|---|
| 10220 S. 76th Ave. | 16501 S. Kedzie Pkwy. |
| Bridgeview, IL 60455 | Markham, IL 60426 |

You must file within 30 days after service of this summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF
REQUESTED IN THE COMPLAINT.

To the officer:

        This summons must be returned by the officer or other person to whom it was given for service, with
endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall
be returned so endorsed. This summons may not be served later than 30 days after its date.

APR 0 2 2001

Atty. No.: 24852

WITNESS, _____

Name: Ronald Gertzman

DOROTHY BROWN
CLERK OF CIRCUIT COU...

Atty. for: Plaintiff

Clerk of Court

Address: 205 West Randolph, Suite 401

City/State/Zip: Chicago, IL 60606

Date of service: _____ ,
(To be inserted by officer on copy left with defendant
or other person)

Telephone: (312) 236-3850

Service by Facsimile Transmission will be accepted at: N/A

(Area Code)    (Facsimile Telephone Number)

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

STATE OF ILLINOIS    )
                     ) SS.          Attorney Code #24852
COUNTY OF COOK    )

### IN THE CIRCUIT COURT OF COOK COUNTY
### COUNTY DEPARTMENT – LAW DIVISION

WAFEEK A. SHALABI, a bachelor, a/k/a    )
WALLY SHALABI,                         )
                                            )
                       Plaintiff, )      01L 003879
                                    ) Case No.  CALENDAR E
    vs.                         )         TORT-INTENTIONAL
THE HUNTINGTON NATIONAL BANK, a    )
federally chartered national banking association;  )
THE HUNTINGTON MORTGAGE COMPANY,    )
an Ohio corporation; and PIERCE & ASSOCIATES  )
PC, an Illinois professional corporation,       )
                                    )
                     Defendants. )

### COMPLAINT FOR FRAUD

Now comes the Plaintiff WAFEEK A. SHALABI, a bachelor, a/k/a WALLY

SHALABI, by and through his attorney, Ronald Gertzman, and complains for fraud

against the Defendants THE HUNTINGTON NATIONAL BANK; THE

HUNTINGTON MORTGAGE COMPANY; and PIERCE & ASSOCIATES PC, and in

support hereof he states as follows:

### Parties

1. The Plaintiff WAFEEK A. SHALABI, a bachelor, a/k/a WALLY SHALABI

("Shalabi") was and is at all relevant times a resident of the County of Cook, State of

Illinois, maintaining his principal place of residence at 10517 West Golf Road, Orland

Park, Illinois.

Apr-16-01    03:34pm    From-Huntington Natl Bank Legal Dept        614-480-5404        T-452    P.005/020    F-275

2.  The Defendant THE HUNTINGTON NATIONAL BANK, a federally chartered national banking association ("Huntington Bank") maintains its principal office in Columbus, Ohio.  Huntington Bank is a multi-state, regional bank in the business of providing full-service commercial and consumer banking.

3.  The Defendant THE HUNTINGTON MORTGAGE COMPANY, an Ohio corporation ("Huntington Mortgage"), a wholly-owned subsidiary of Huntington Bank, maintains its principal office in Columbus, Ohio.. Huntington Mortgage is a multi-state, mortgage originator and servicer of billions of dollars of mortgage loans.

4.  Huntington Mortgage is a wholly-owned subsidiary of Huntington Bank. Huntington Bank directly and indirectly supervises and controls the activities of Huntington Mortgage through senior level executives at Huntington Mortgage reporting to Huntington Bank, Huntington Bank's corporate counsel rendering legal advice and legal supervision of various matters, by committee reporting, and by audit and financial review and control.   (Huntington Bank and Huntington Mortgage shall be collectively referred to as "Huntington").

5.  The Defendant PIERCE & ASSOCIATES PC, an Illinois professional corporation ("Pierce) is a law firm maintaining its principal office in the City of Chicago, County of Cook, State of Illinois, with a concentrated legal practice of representing mortgage lenders in mortgage foreclosure litigation in the State of Illinois.

### Common Allegations of Fact

6.  In November, 1990, Huntington Mortgage made a residential mortgage loan to Shalabi in the amount of $186,000.00 to provide him financing for the purchase of his Home at 10517 West Golf Road, Orland Park, Illinois, (the "Property" or "Home").

7.  In addition to the mortgage and note executed for the mortgage loan mentioned hereinabove, Shalalabi executed Huntington Mortgage's Escrow Account Disclosure Agreement made pursuant to the provisions of the Illinois Mortgage Escrow Account Act (Chapter 765, Section 910/1 et seq. ILCS).

8.  Unbeknownst to Shalabi until disclosed in 1998, Huntington Mortgage sold Shalabi's mortgage loan in December, 1990, retaining only its servicing rights. Huntington Mortgage repurchased the mortgage loan in 1999. During all times relevant, Huntington Mortgage was merely the loan servicer for the mortgagee.

9.  Shalabi made all mortgage loan payments from inception through May, 1995.

10.  Huntington Mortgage failed to make any payments for Shalabi's real estate taxes from its escrow account between 1991 through 1995.

11.  From 1991 through 1994, Huntington Mortgage disbursed more than $14,776.00 from Shalabi's real estate tax escrow account, none of which was paid for the Shalabi's Property's real estate taxes.

12.  After being notified that the delinquent real estate taxes for the Property had been sold by the County of Cook to the Q.T.S. Corporation, Huntington Mortgage

advised Shalabi that it would correct the real estate tax problem resulting from Huntington Mortgage's failure to pay Shalabi's Property's real estate taxes in 1991 and thereafter.

13.  Huntington Mortgage failed to make redemption of Property's real estate taxes.

14.  Prior to May, 1995, Huntington Mortgage failed to notify Shalabi that Huntington Mortgage did not redeem his Property's real estate taxes.

15.  On January 30, 1995, the Circuit Court of Cook County entered an order for the issuance of a tax deed for the Shalabi Property to the Q.T.S. Corporation.

16.  In February, 1995, the Cook County Clerk issued a tax deed of the Q.T.S. Corporation, resulting in the extinguishments of Huntington Mortgage's mortgage and Shalabi's ownership interest in the Property.

17.  In May or June, 1995, Shalabi notified Huntington Mortgage that a representative of the Q.T.S. Corporation served him with a copy of a court order granting it possession of Shalabi's Home.

18.  In July, 1995, Huntington Mortgage's Escrow Administration Manager, Serf Hernandez, advised Shalabi, verbally and in writing, to make no further monthly mortgage payments until Huntington Mortgage resolved the real estate tax problem.

19.  During the summer of 1995, Huntington Mortgage, represented by Pierce & Associates, sought judicial relief from the court's January 30, 1995, Order directing issuance of a tax deed, without success.

Apr-16-01   03:35pm   From-Huntington Natl Bank Legal Dept        614-480-5404        T-452   P.008/020   F-275

### The Common Allegations of the Fraud Scheme

20. Recognizing that Huntington had exhausted its adversarial efforts to void or defeat the tax deed issue to the Q.T.S., Corporation, Huntington began settlement negotiations with the Q.T.S. Corporation to accomplish the same results originally sought adversarially, at a price acceptable to the Q.T.S. Corporation.

21. On September 28, 1995, Huntington Bank issued an expense voucher bearing the authorized signature of Huntington Bank's corporate Senior Vice President and Comptroller John VanFleet for the payment of $186,785.00 to the Q.T.S. Corporation for the account of Huntington Mortgage. Huntington utilized these funds to pay the Q.T.S. Corporation to complete its settlement agreement and regain the mortgage and Shalabi's ownership interest.

22. Huntington, having paid more than $186,000.00 to regain the $186,000.00 mortgage loan, now engaged in a fraudulent scheme to recover its losses from Shalabi.

23. Huntington's personnel, Senior Vice President Irving Adler, and legal counsel John Stopa, either directly or in a supervisory capacity, directed Huntington Mortgage to:

  a) alter its representation previously made to Shalabi to make no mortgage payments until the matter has been resolved;

  b) deplete Shalabi's escrow account by paying fictitious real estate taxes allegedly to Cook County Collector and retain those monies at Huntington Bank;

  c) substantially distorting Shalabi's 1995 annual escrow account disclosure statement to reflect an escrow account shortage of ($66,949.36);

  d) wrongfully increase Shalabi's monthly mortgage payments from $1,956.21 to $8,491.61;

  e) wrongfully caused the acceleration of Shalabi's loan in order to foreclose the mortgage in an attempt to obtain Shalabi's equity in the Property; and

  f) attempt to recover monies in a foreclosure proceedings to which Huntington knew it was not entitled.

## Fraudulent Acts

### a) Fraudulent Misrepresentations

24. Huntington knew that its employee Serf Hernandez directed Shalabi in July, 1995, to make no further monthly mortgage payments to Huntington until the real estate tax matter was resolved.

25. Huntington knew that Shalabi would rely on the representation made by Huntington's employee Serf Hernandez to make no payments to Huntington until the real estate tax matter was resolved.

26. Shalabi relied on the representation made by Huntington's supervisor to make no further monthly mortgage payments to Huntington from June/July, 1995, until the real estate tax matter was resolved.

27. In December, 1995, Senior Vice President Irving Adler knowingly misrepresented and distorted the representation made by Serf Hernandez to Shalabi in July, 1995, mischaracterized the statement as postponing Shalabi's mortgage payments and now sought $13,693.47 from Shalabi on December 19, 1995.

### b. Paying Fictitious Real Estate Taxes

28. Following the settlement agreement in September, 1995, and prior to December 29, 1995, no real estate taxes were due, payable or owing on the Shalabi Property.

29. On December 29, 1995, Huntington caused the issuance of a check reflecting the disbursement of $12,934.39 from the Shalabi escrow account to the Cook County Collector allegedly, for the payment of real estate taxes for the Shalabi Home.

6

30. On information and belief, Huntington never sent to the Cook County Collector the check in the amount of $12,934.39 drawn payable to the Cook County Collector.

31. Huntington intentionally and knowingly negotiated and cleared the check issued by Huntington Mortgage to the Cook County Collector and credited an account of the Huntington Bank with the amount of $12,934.39.

32. At all times after December 29, 1995, Huntington intentionally and knowingly misrepresented that the disbursement from the Shalabi Escrow Account for $12,934.39 was for the payment to the Cook County Collector for the Property's real estate taxes.

33. At all times after December 29, 1995, Huntington has intentionally and knowingly maintained its loan account records for the Shalabi mortgage loan reflecting the depletion of the Shalabi escrow account on December 29, 1995, in the amount of $12,934.39 as being a payment for the real estate of the Shalabi Property.

34. At all times subsequent to December 29, 1995, Shalabi has relied on Huntington's intentional and knowingly false statement that it paid Shalabi's real estate taxes of $12,934.39 to the Cook County Collector, until the fall of 2000 when Huntington's disclosure of documents revealed that Huntington Bank retained the $12,934.39.

35. At no time subsequent to December 29, 1995, has Huntington credited Shalabi's mortgage loan with the amount of $12,934.39, the amount kept by Huntington Bank.

### c) The Fraudulent Escrow Account Shortage

36. In December, 1995, Huntington knowingly and intentionally caused the preparation of a false and erroneous annual escrow account disclosure statement to reflect a shortage in the escrow account in the amount of ($66,949.36).

37. At all times, Huntington knew that the annual escrow account disclosure statement sent to Shalabi wrongfully disclosed a shortage in the escrow account in the amount of ($66,949.36).

38. Huntington knew that Shalabi would rely on the escrow account analysis it prepared in December, 1995, for the Shalabi loan.

39. In the later part of 1995, Huntington provided Shalabi with a pay off letter or verbally advised Shalabi of the pay off letter requirements for the Shalabi mortgage loan that included the incorrect escrow account shortage.

### d) Huntington Intentionally Wrongfully Increased Shalabi's Mortgage Payments

40. In early 1996, Huntington intentionally and knowingly wrongfully sought to increase Shalabi's monthly mortgage payment from $1,956.21 to $8,491.61.

41. Huntington notified Shalabi of the increase in his monthly mortgage payments by causing a coupon mortgage payment book to be mailed to Shalabi reflecting the increased wrongful amount of $8,491.61.

8

### e) Huntington's Wrongful Acceleration and Foreclosure of Shalabi's Mortgage Loan

42. On January 13, 1996, Huntington Mortgage sent a Notice of Intention to Accelerate and Foreclose to Shalabi claiming that $15,809.48 was due and owing on his mortgage loan, and if payment was not made on or before February 17, 1996, Huntington Mortgage was going to foreclose the mortgage loan on his Home.

42. On January 13, 1996, Huntington Mortgage knew that Shalabi did not owe Huntington $15,809.48.

43. Huntington Mortgage failed to disclose to Shalabi in its January 13, 1996, Notice of Intention to Accelerate and Foreclose that Huntington transferred $12,934.39 to Huntington Bank from Shalabi's real estate tax escrow account.

44. Huntington Mortgage failed to disclose to Shalabi in its January 13, 1996, Notice of Intention to Accelerate and Foreclose that it did not require Shalabi to make monthly mortgage payments to Huntington from June/July, 1995, until the real estate tax matter was resolved.

45. On January 13, 1996, Huntington knew that it was not entitled to $15,809.48 from Shalabi on his mortgage loan account.

46. In July, 1996, Huntington Mortgage filed a mortgage foreclosure action against Shalabi in the Circuit Court of Cook County, Illinois, bearing case no. 96 CH 6877 claiming Huntington's entitlement to the principal balance of $180,124.66 plus interest, taxes, insurance, fees and costs and advances since June, 1995.

47. At no time has Huntington acknowledged its retention of $12,934.39 from Shalabi's tax escrow account as a set off or reduction of the principal balance of the loan.

9

### (f) Huntington's Fraudulent Claim to Monies

48. Huntington at all relevant times has made disbursements from the Shalabi escrow account allegedly for the Property's real estate taxes.

49. In most instances, Huntington did not pay the Property's real estate taxes, although Huntington disbursed tens of thousands of dollars from the Shalabi escrow account allegedly in payment of the Property's real estate taxes.

50. Huntington knowingly, intentionally, and wrongfully depleted Shalabi's escrow account in the amount of $12,934.39 allegedly for the Property's real estate taxes. Huntington intentionally kept the money at Huntington Bank.

51. At no time subsequent to December, 1995, has Huntington acknowledged its wrongful disbursement from Shalabi's escrow account for payment of real estate taxes.

52. At all relevant times since July, 1996, Huntington has asserted a claim for monies against Shalabi that included the real estate tax payments which Huntington knowingly did not pay for the Shalabi's Property's real estate taxes.

53. In addition, Huntington has sought thousands of dollars from Shalabi for which it is not entitled.

10

## Count I: Breach of Fiduciary Duty

1-53. The Plaintiff Shalabi realleges paragraphs 1-53 set forth hereinabove as paragraphs 1-53 of Count I as though fully set forth herein.

54. At all times relevant, Huntington Mortgage represented itself as a substantial multi-billion dollar residential mortgage lender providing and making mortgage loans to the consumer.

55. The Plaintiff Shalabi knowing of Huntington Mortgage's reputation and expertise in providing home mortgages applied for a home mortgage loan from Huntington Mortgage.

56. The Plaintiff Shalabi had confidence that Huntington Mortgage, with its expertise and financial credibility, would properly administer the escrow account established for the Shalabi's Home's real estate taxes.

57. Huntington Mortgage, as escrowee of the escrow account, owed Shalabi a duty of great care in the administration of the escrow account.

58. Shalabi depended on Huntington Mortgage to administer the escrow account as a fiduciary.

59. Huntington Mortgage in its fiduciary capacity was obligated to Shalabi to take immediate curative action of any mistakes Huntington Mortgage caused by its mismanagement of the escrow account.

60. Huntington Mortgage violated and breached its fiduciary duty to Shalabi by:

    a)    disbursing $14,776.00 from the escrow account which was not for the payment of Shalabi's real estate taxes for his Home;

    b)    failing to make immediate redemption of the real estate taxes sold by the County of Cook to Q.T.S. Corporation;

    c)    allowing the issuance of a tax deed resulting from Huntington Mortgage's failure to redeem the Shalabi real estate taxes;

    d)    disbursing $12,934.37 from the Shalabi escrow account to a Huntington Bank account by issuing a check depicting the disbursement to the Cook County Collector;

    e)    by allowing the disbursements from the escrow account to cause the annual escrow account disclosure statement issued in December, 1995, resulting in a escrow shortage of ($66,949.36);

    f)    by failing to account for all monies disbursed from the escrow account, not in payment of the Shalabi real estate taxes, resulting in the Notice of Intent to Accelerate and Foreclose being issued in January, 1996.

61. Shalabi suffered damages as a result of Huntington's intentional, fraudulent misrepresentations and actions:

    a)    failed to receive credit for monies deposited with Huntington Mortgage in the escrow account which were disbursed by Huntington Mortgage not in payment of the real estate taxes for the Shalabi Home.

    b)    caused Shalabi to lose ownership of his home between January, 1995, and October, 1995;

    c)    caused Huntington Mortgage to accelerate the Shalabi mortgage loan and file a mortgage foreclosure action when the mortgage loan was not in default; and

    d)    require Shalabi to incur more than $50,000.00 of legal fees and expenses in the defense of the Huntington mortgage foreclosure action against the Shalabi Home.

62. Shalabi has been damaged as a result of Huntington's fraudulent scheme and intentional fraudulent acts in an amount in excess of $50,000.00.

63. Huntington acted willfully, wantonly, with malice, and in reckless disregard to Shalabi by its fraudulent acts and scheme set forth hereinabove.

64. Huntington's fraudulent acts were intentional and devised to be concealed from Shalabi whenever possible.

65. Huntington's fraudulent scheme and acts were intended to financially damage and destroy Shalabi.

66. Shalabi is entitled to a claim of punitive damages against Huntington for the gross, wanton, and reckless fraudulent scheme and acts set forth hereinabove.

WHEREFORE, the Plaintiff Wafeek A. Shalabi prays this Court to enter judgment against the Defendants the Huntington Bank and the Huntington Mortgage Company as follows:

A. Actual damages in the amount of $62,934.39;

B. Exemplary damages and punitive damages in the amount in excess of $50,000.00; and

C. Plaintiff's reasonable attorney's fees and court costs of this action.

13

## Count II:  Huntington's Scheme to Defraud Shalabi

1-66.  The Plaintiff Shalabi realleges paragraphs 1-66 of Count I set forth hereinabove as paragraphs 1-66 of Count II as though fully set forth herein.

67.  Huntington, through Huntington Mortgage, in conjunction with Huntington Bank schemed to defraud Shalabi of money and any equity existing in his Home as a result of Huntington's fraudulent actions set forth hereinabove.

68.  Huntington departed from its contractual obligations in the Shalabi mortgage loan transaction by its overt acts to divert monies to Huntington Bank from Shalabi's escrow account.

69.  Huntington proceeded intentionally, recklessly, wantonly and in total disregard to Shalabi's interest to assert a wrongful default of mortgage  while knowing that no default existed in order to take unfair advantage and economically damage Shalabi and his credit-worthiness.

70.  Shalabi exercised, as best as possible, a reasonable effort to secure the truth of the deceitful transactions.

71.  Huntington is a $30 billion asset based commercial and consumer lender, which sought through a fraudulent scheme to recover its losses of the Shalabi loan transaction from Shalabi and the Property.

WHEREFORE, the Plaintiff Wafeek A. Shalabi prays this Court to enter judgment against the Defendants the Huntington Bank and the Huntington Mortgage Company as follows:

A.  Actual damages in the amount of $62,934.39;

B.  Exemplary damages and punitive damages in the amount in excess of $50,000.00; and

C.  Plaintiff's reasonable attorney's fees and court costs of this action.

14

## Count III:  Consumer Fraud

1-53.  The Plaintiff Shalabi realleges paragraphs 1-53 of Count I  set forth hereinabove as paragraphs 1-53 of Count III as though fully set forth herein.

54.  Pierce engages in a deceitful and unlawful program assisting its clients to assess late charges to mortgage loans after the acceleration of mortgage loan that are delinquent in the State of Illinois.

55.  Pierce as part of its deceitful program assisted  Huntington to include post-acceleration late charges as part of the total balance of monies due from Shalabi in foreclosure proceedings filed in the State of Illinois.

56.  Huntington participated with Pierce in Pierce's  deceitful program to unlawfully assess late charges which Huntington is not entitled to as a result of the accelerated mortgage.

57.  Huntington accrual of late charges after acceleration, with the assistance of Pierce are in violation of its loan documents, its Trust and Lending Disclosure Statements, and in violation of Illinois case law decisions.

58.  Shalabi asserts this action for fraud committed by Huntington and Pierce in its deceitful program to include late charges for which it is not entitled to, is brought pursuant to the Illinois Consumer Fraud Action, Chapter 815, Section 505/1 et. Seq. of the Illinois Law Compiled Statutes.

59.  Shalabi has incurred damages in excess of $50,000.00 , in part, in defending against the wrongfully charged late charges alleged by Huntington and asserted by Pierce in the foreclosure case.

60. Huntington engaged Pierce to file and represent Huntington in the foreclosure action mentioned hereinabove knowing that Pierce would assert post-acceleration late charges against Shalabi for which Huntington is not entitled.

61. Huntington engage and compensates Pierce knowing that Pierce would promote the post-acceleration late charges in Huntington's effort to recover as much money as possible against Shalabi and the equity in Shalabi's Property.

62. Pierce has for years participated with Huntington and other mortgage lenders to wrongfully recover post-acceleration late charges for which it knows its clients, the mortgage lenders are not entitled.

WHEREFORE, the Plaintiff Wafeek A. Shalabi prays this Court to enter judgment against the Defendants the Huntington Bank, the Huntington Mortgage Company and Pierce & Associates PC as follows:

A. Actual damages in the amount of $62,934.39;

B. Exemplary damages and punitive damages in the amount in excess of $50,000.00; and

C. Plaintiff's reasonable attorney's fees and court costs of this action.

<div style="margin-left:40%;">

WAFEEK A. SHALABI, a bachelor, a/k/a
WALLY SHALABI, *the Plaintiff*


By: *[signature]*
Ronald Gertzman, Attorney

</div>

Ronald Gertzman #28452
Attorney for Plaintiff
205 West Randolph, Suite 401
Chicago, IL  60606
(312) 236-3850

16

STATE OF ILLINOIS    )
                     ) SS.
COUNTY OF COOK       )

## VERIFICATION

I, WAFEEK A. SHALABI, a bachelor, a/k/a WALLY SHALABI, having first

been sworn under oath, affirm and state, that I am the Plaintiff in the above-captioned

action; that I have read the above and foregoing Complaint; and that the allegations of the

fact set forth therein are true and correct.

Subscribed and sworn to
Before me this _30_ day of March, 2001.

Notary Public

"OFFICIAL SEAL"
DIANE M. SCLAFANI
COMMISSION EXPIRES 01/16/04

# EXHIBIT   B

Source: All Sources : Public Records : Business & Corporation Information : Combined Corporation and Limited Partnership Information ❶
Terms: huntington national bank  (Edit Search)

*INDIANA SECRETARY OF STATE, CORPORATE/LTD PARTNERSHIP RECORDS*

\*\*\* THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE OFFICE OF THE INDIANA SECRETARY OF STATE. \*\*\*

INDIANA SECRETARY OF STATE, CORPORATE/LTD PARTNERSHIP RECORDS

**NAME:** THE **HUNTINGTON NATIONAL BANK**

**TYPE:** FOREIGN CORPORATION FOR-PROFIT

**STATUS:** ACTIVE

**DATE OF INCORPORATION/QUALIFICATION:** 04/09/1997
    Original Incorporation:  01/01/1997

**ACTS:** PROFIT

**MAILING ADDRESS:** 41 S. HIGH ST.
        COLUMBUS, OH 43287

**STATE OF INCORPORATION:** OHIO

**REGISTERED AGENT:** CT CORPORATION SYSTEM

**REGISTERED OFFICE:** ONE N. CAPITOL AVE.
        INDIANAPOLIS, IN 46204

OTHER:      RALPH K. FRASIER
        41 S. HIGH ST.
        COLUMBUS, OH 43287

**NUMBER:** 1997040804

**HISTORY:** CERTIFICATE OF AUTHORITY
        FILED: 04/09/1997, EFFECTIVE: 04/09/1997

**CALL LEXIS DOCUMENT SERVICES FOR ALL YOUR CORPORATE NEEDS. 800-634-9738**

Source: All Sources : Public Records : Business & Corporation Information : Combined Corporation and Limited Partnership Information ❶
Terms: huntington national bank  (Edit Search)
View: Full
Date/Time: Tuesday, April 24, 2001 - 9:50 PM EDT

About LEXIS-NEXIS | Terms and Conditions

Copyright © 2001 LEXIS-NEXIS Group.  All rights reserved.

# EXHIBIT  C

Source: All Sources : Public Records : Business & Corporation Information : **Combined Corporation and Limited Partnership Information** ⓘ

Terms: huntington mortgage (Edit Search)

*ILLINOIS SECRETARY OF STATE, CORPORATE RECORD*

***THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE OFFICE OF THE ILLINOIS SECRETARY OF STATE ***

ILLINOIS SECRETARY OF STATE, CORPORATE RECORD

**NAME:** THE **HUNTINGTON MORTGAGE** COMPANY

**TYPE:** FOREIGN CORPORATION

**STATUS:** GOOD STANDING

(provided that (a) the franchise taxes/annual reports have been filed on a timely basis and (b) the entity has a valid registered agent. These items should be verified.)

**DURATION:** PERPETUAL

ANNIVERSARY MONTH: JULY

**DATE OF INCORPORATION/QUALIFICATION:** 07/14/1988

**STATE OF INCORPORATION:** OHIO

**REGISTERED AGENT:** CT CORPORATION SYSTEM

**REGISTERED OFFICE:** 208 SOUTH LASALLE STREET
CHICAGO, ILL  60604-1136
COOK COUNTY

LAST CHANGE IN REGISTERED AGENT:  07/14/1988

**ANNUAL-REPORT:**

| | PREVIOUS TAX YEAR 1999 | CURRENT TAX YEAR 2000 |
|---|---|---|
| DATE ANNUAL REPORT FORM MAILED TO CORPORATION: | 05/14/1999 | 05/13/2000 |
| DUE DATE OF ANNUAL REPORT: | 07/01/1999 | 07/01/2000 |
| DATE ANNUAL REPORT FILED: | 08/02/1999 | 10/12/2000 |
| DATE FRANCHISE TAX PAID: | 08/02/1999 | 10/12/2000 |
| DATE DELINQUENCY NOTICE MAILED: | | 08/18/2000 |
| TAX FACTOR: | 0.000032 | 0.000535 |
| TAX AMOUNT PAID: | $ 25.00 | $ 28.75 |
| ANNUAL REPORT CAPITAL: | $ 0.00 | $ 0.00 |
| ILLINOIS CAPITAL: | $ 0.00 | $ 0.00 |

PRESIDENT:  T J FINNEGAN III
7575 HUNTINGTON PK DR HM2300 COLUMBUS OH

SECRETARY:  RICHARD A CHEAP
41 S HIGH STREET COLUMBUS OHIO 43287

**HISTORY:** REGULATED BY ILLINOIS COMMERCE COMMISSION:  NO

**PURPOSE:** FINANCIAL, LENDING AND INVESTMENT INSTITUTIONS OTHER THAN BANKS

**CORPORATION NUMBER:** 55153922

**CURRENT CAPITAL AND STOCK INFORMATION:**

ILLINOIS CAPITAL (FOREIGN ONLY):  $ 4,418
LAST CHANGE IN CAPITAL:  10/19/1990
TAX CAPITAL:  $ 100,000
TOTAL CAPITAL:  $ 100,000

| STOCK CLASS | AUTHORIZED SHARES | SHARES ISSUED | PAR VALUE | VOTING RIGHTS |
|---------|---------|---------|---------|---------|
| COMM | 500 | 500.00 | 0 | YES |

**CALL LEXIS DOCUMENT SERVICES FOR ALL YOUR CORPORATE NEEDS. 800-634-9738**

Source: All Sources : Public Records : Business & Corporation Information : **Combined Corporation and Limited Partnership Information** ❶
Terms: **huntington mortgage**  (Edit Search)
View: Full
Date/Time: Tuesday, April 24, 2001 - 9:46 PM EDT

About LEXIS-NEXIS | Terms and Conditions

Copyright © 2001 LEXIS-NEXIS Group.  All rights reserved.

# EXHIBIT D

Source: All Sources : / . . . / : IL Secretary of State Corporation Information ⓘ
Terms: **pierce associates** (Edit Search)

## ILLINOIS SECRETARY OF STATE, CORPORATE RECORD

***THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE OFFICE OF THE ILLINOIS SECRETARY OF STATE ***

### ILLINOIS SECRETARY OF STATE, CORPORATE RECORD

**NAME: PIERCE & ASSOCIATES,** P.C.

**TYPE:** DOMESTIC CORPORATION

**STATUS:** GOOD STANDING

(provided that (a) the franchise taxes/annual reports have been filed on a timely basis and (b) the entity has a valid registered agent. These items should be verified.)

**DURATION:** PERPETUAL

ANNIVERSARY MONTH: JULY

**DATE OF INCORPORATION/QUALIFICATION:** 07/09/1992

**STATE OF INCORPORATION:** ILLINOIS

**REGISTERED AGENT:** DENIS B PIERCE

**REGISTERED OFFICE:** 18 S MICHIGAN AVE #1200
CHICAGO, ILL 60603-3210
COOK COUNTY

LAST CHANGE IN REGISTERED AGENT: 07/09/1992

**ANNUAL-REPORT:**

| | PREVIOUS TAX YEAR | CURRENT TAX YEAR |
|---|---|---|
| | 1999 | 2000 |
| DATE ANNUAL REPORT FORM MAILED TO CORPORATION: | 05/14/1999 | 05/13/2000 |
| DUE DATE OF ANNUAL REPORT: | 07/01/1999 | 07/01/2000 |
| DATE ANNUAL REPORT FILED: | 06/21/1999 | 06/14/2000 |
| DATE FRANCHISE TAX PAID: | 06/21/1999 | 06/14/2000 |
| TAX FACTOR: | 1.000000 | 1.000000 |
| TAX AMOUNT PAID: | $ 25.00 | $ 25.00 |
| ANNUAL REPORT CAPITAL: | $ 0.00 | $ 0.00 |
| ILLINOIS CAPITAL: | $ 0.00 | $ 0.00 |

PRESIDENT: DENIS B PIERCE
18 S MICHIGAN AVE CHICAGO 60603

SECRETARY: KATHERINE B FILE
SAME

**HISTORY:** REGULATED BY ILLINOIS COMMERCE COMMISSION: NO

**PURPOSE:** PROFESSIONAL SERVICES - LEGAL, ACCOUNTING, ENGINEERING, ETC. (REGISTER WITH REGISTRATION AND EDUCATION).

**CORPORATION NUMBER:** 56902945

**CURRENT CAPITAL AND STOCK INFORMATION:**

LAST CHANGE IN CAPITAL: 07/09/1992
TAX CAPITAL: $ 1,000
TOTAL CAPITAL: $ 1,000

| STOCK CLASS | AUTHORIZED SHARES | SHARES ISSUED | PAR VALUE | VOTING RIGHTS |
|---------|------------------|---------------|-----------|---------------|
| COMM | 10,000 | 1,000.00 | 1.00000 | YES |

**CALL LEXIS DOCUMENT SERVICES FOR ALL YOUR CORPORATE NEEDS. 800-634-9738**

Source:    All Sources : / . . . / : **IL Secretary of State Corporation Information** ❶
Terms:    **pierce associates**   (Edit Search)
View:    Full
Date/Time:    Tuesday, April 24, 2001 - 9:53 PM EDT

About LEXIS-NEXIS | Terms and Conditions

Copyright © 2001 LEXIS-NEXIS Group.  All rights reserved.

# EXHIBIT   E

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 35 of 58 PageID #:35

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 16213

Page 1 of 15

Service: **LEXSEE®**
Citation: **1999 U.S. Dist. LEXIS 16213**

*1999 U.S. Dist. LEXIS 16213, \**

Ruth Jacobson, on behalf of herself and all other persons and entities similarly situated, Plaintiff, v. Ford Motor Company and Gerald Lincoln-Mercury, Inc., Defendants.

No. 98 C 742

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1999 U.S. Dist. LEXIS 16213

September 30, 1999, Decided
October 1, 1999, Docketed

**DISPOSITION:** **[\*1]** Jacobson's motion to remand denied and GLM's motion to dismiss granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff moved for remand to state court based on non-diversity of defendant automobile dealer, who moved to dismiss the class action that alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act and Uniform Deceptive Trade Practices Act.

**OVERVIEW:** Plaintiff brought a class action suit in state court against defendants, an automobile manufacturer and one of its dealers, alleging that the defendants' warranties were in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §§ 505/1 et seq. (1992) and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. §§ 510/1 et seq. (1992). After removal to federal court, plaintiff sought remand based on the non-diversity of the defendant dealer. After determining that the amount in controversy based on injunctive relief satisfied jurisdictional requirements, the court held that the plaintiff failed to allege particular facts that would constitute fraud, breach of contract, or any other illegal conduct on the part of the dealer. Since plaintiff had no possibility of success against the dealer, and thus class claims could not survive, defendant dealer was fraudulently joined and the court had diversity jurisdiction.

**OUTCOME:** Plaintiff's motion to remand was denied and defendant automobile dealer's motion to dismiss was granted because plaintiff's failure to allege facts constituting illegal conduct demonstrated that plaintiff, and thus the class, had no possibility of success against the dealer, and therefore the dealer's fraudulent joinder could not defeat diversity jurisdiction.

**CORE TERMS:** warranty, supplemental jurisdiction, motion to dismiss, joined, fraudulently, joinder, secret, fraudulent, putative, coverage, dealer, fraudulent joinder, removal, diversity, bought, particularity, diversity jurisdiction, repaint, paint, misrepresentation, in-state, proposed class, nationwide, omission, overlap, pled, motor vehicles, misunderstanding, dealership, customer

## CORE CONCEPTS - ◆ Hide Concepts

☐ Civil Procedure : Jurisdiction

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 36 of 58 PageID #:36

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 16213                    Page 2 of 15

⚓   Federal courts have limited jurisdiction.

📄 Civil Procedure : Removal : Basis for Removal
⚓Removal from state court to federal court is appropriate only where the federal court would have original jurisdiction over the suit. 28 U.S.C.S. § 1441(b).

📄 Civil Procedure : Removal : Removal Procedures
⚓The court determines jurisdictional facts at the time of removal and ignores post-removal pleadings.

📄 Civil Procedure : Removal : Basis for Removal
⚓Courts presume that a plaintiff's choice of forum is proper and valid and resolve doubts about jurisdiction in favor of remand.

📄 Civil Procedure : Removal : Basis for Removal
⚓ The burden of establishing jurisdiction falls on the party seeking removal.

📄 Civil Procedure : Removal : Basis for Removal
⚓Removal is proper under 28 U.S.C.S. § 1441 when the suit satisfies the amount in controversy requirement, 28 U.S.C.S. § 1332(a), and there is complete diversity among parties properly joined. 28 U.S.C.S. § 1332(a)(1).

📄 Civil Procedure : Jurisdiction : Diversity Jurisdiction : Citizenship
⚓For diversity jurisdiction to exist in a class action suit, the named class representatives must be diverse from all defendants.

📄 Civil Procedure : Removal : Basis for Removal
⚓A case with a non-diverse defendant becomes removable on dismissal of that defendant only if the plaintiff voluntarily dismisses the defendant, 28 U.S.C.S. § 1446 (b), or if the defendant was dismissed as fraudulently joined.

📄 Civil Procedure : Jurisdiction : Diversity Jurisdiction : Amount in Controversy
⚓The Seventh Circuit has identified three situations, measured by the cost of enforcing relief to the defendant, in which the amount-in-controversy requirement could be met, namely, where the requested injunction would: (1) require some alteration in the defendant's business practices that would cost more than the statutory amount; (2) force the defendant to forgo a benefit that is worth more than the threshold amount; or (3) entail clerical or ministerial costs of compliance greater than the statutory amount.

📄 Civil Procedure : Jurisdiction : Diversity Jurisdiction : Amount in Controversy
⚓Diversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent.

📄 Civil Procedure : Jurisdiction : Diversity Jurisdiction : Amount in Controversy
⚓The removing party bears the burden of proving that the joinder was fraudulent, and must prove either that (1) plaintiff has no chance of success against the non-diverse defendant or (2) plaintiff has fraudulently pled jurisdictional facts.

📄 Antitrust & Trade Law : Consumer Protection : Deceptive Sales Practices

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 37 of 58 PageID #:37

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 16213      Page 3 of 15

To bring a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §§ 505/1 et seq. (1992), a plaintiff must allege the following: (1) a deceptive act or practice by defendant; (2) an intent by defendant that the plaintiff rely on the deception; and (3) that the deception occurred in a course of conduct involving trade or commerce. Plaintiffs must also plead their claims with particularity, alleging facts establishing the elements of fraud, including what misrepresentations were made, when they were made, who made the misrepresentations, and to whom they were made.

🗀 Antitrust & Trade Law : Consumer Protection
The Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. §§ 510/1 et seq. (1992), permits private suits for injunctive relief but does not does not provide a cause of action for damages.

📄 Antitrust & Trade Law : Consumer Protection : Deceptive Sales Practices
815 Ill. Comp. Stat. § 510/2(5) provides that a person engages in a deceptive trade practice by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have.

📄 Civil Procedure : Jurisdiction : Diversity Jurisdiction : Amount in Controversy
Fraudulent joinder in a class action cannot be established merely by showing that most of the proposed class would be unable to obtain relief against one named defendant.

📄 Civil Procedure : Jurisdiction : Subject Matter Jurisdiction : Supplemental Jurisdiction
Federal district courts have supplemental jurisdiction over claims that are part of a case or controversy over which original jurisdiction exists. 28 U.S.C.S. § 1367(a).

📄 Civil Procedure : Jurisdiction : Subject Matter Jurisdiction : Supplemental Jurisdiction
Supplemental jurisdiction does not extend to claims by plaintiffs against persons made parties under Fed. R. Civ. P. 14, 19, 20, or 24 when: (1) original jurisdiction is based on 28 U.S.C.S. § 1332, the diversity jurisdiction provision; and (2) supplemental jurisdiction would be inconsistent with the jurisdictional requirements of 28 U.S.C.S. § 1332. 28 U.S.C.S. § 1367(b). Parties permissively joined under Fed. R. Civ. P. 20 are included in this exception to supplemental jurisdiction, but parties joined as part of a class under Fed. R. Civ. P. 23(a) are not.

**COUNSEL:** For RUTH JACOBSON, plaintiff: Robert Aaron Langendorf, Robert A. Langendorf and Associates, Chicago, IL.

For FORD MOTOR COMPANY, GERALD LINCOLN-MERCURY, INC., defendants: Alfred M. Swanson, Jr., Friedman & Holtz, P.C., Chicago, IL.

**JUDGES:** JOAN B. GOTTSCHALL, United States District Judge.

**OPINIONBY:** JOAN B. GOTTSCHALL

**OPINION: MEMORANDUM OPINION AND ORDER**

Plaintiff, Ruth Jacobson ("Jacobson"), originally brought this suit against Ford Motor Company ("Ford") and Gerald Lincoln-Mercury, Inc. ("GLM") in Illinois state court, n1 alleging that both defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") n2 and the Uniform Deceptive Trade Practices Act ("DTPA"). n3 Jacobson also charges each defendant with breach of contract and seeks a declaratory judgment. Defendants removed the suit to this court on February 5, 1998.

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 38 of 58 PageID #:38

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 16213          Page 4 of 15

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 Circuit Court of Cook County, Chancery Division, docket number 97 CH 16530.

n2 815 ILL. COMP. STAT. § 505/1 *et seq.* (1992).

n3 815 ILL. COMP. STAT. § 510/1 *et seq.* (1992).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - **[*2]**

Now before the court are Jacobson's motion to remand n4 and GLM's motion to dismiss. According to Jacobson, this court lacks jurisdiction under 28 U.S.C. § 1332, the diversity jurisdiction provision, because Jacobson and GLM are both citizens of Illinois. Defendants have responded by arguing that GLM's citizenship should be disregarded-and GLM dismissed from this action-because joinder as to GLM is fraudulent.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n4 Jacobson has inaccurately invoked 28 U.S.C. § 1448, which governs service of process after removal, as the basis of her motion to remand. 28 U.S.C. § 1447, which addresses motions to remand following removal, is the proper provision.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

For the reasons set forth below, the court denies Jacobson's motion to remand and grants GLM's motion to dismiss.

## I. BACKGROUND n5

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n5 The facts taken from Jacobson's Class Action Complaint are assumed to be true. *Fredrick v. Simmons Airlines, Inc.,* 144 F.3d 500, 502 (7th Cir. 1998). As the court's jurisdiction has been called into question, however, the court has considered jurisdictional affidavits, mindful of its duty to resolve factual disputes between affidavits in Jacobson's favor. *See, e.g., Kontos v. U.S. Dept. of Labor,* 826 F.2d 573, 576 (7th Cir. 1987) (permitting courts to consider and weigh affidavits in assessing jurisdiction); *Saylor v. Dyniewski,* 836 F.2d 341, 342 (7th Cir. 1988) (accepting uncontested facts as true); *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir. 1987) (resolving conflicts in affidavits in plaintiff's favor).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - **[*3]**

On September 11, 1991, Jacobson purchased a 1991 Mercury Sable automobile that came with a New Vehicle Warranty ("NVW"). On or about the same date, she also purchased an Extended Service Plan ("ESP") for the automobile. Although Jacobson's complaint does not identify from whom Jacobson purchased the vehicle and the ESP, in her reply she identifies the seller of both as GLM, a dealer of automobiles made by Ford.

On or about August 1997, the paint on Jacobson's automobile "peeled, bubbled, and/or corroded." Class Action Complaint ("Complaint"), Count I, P 3. Jacobson requested that the paint be repaired but her request was refused. Jacobson does not identify in her complaint to whom she made this request or whether she made it pursuant to either the NVW or the ESP, but in her reply she indicates she made the request to GLM under the ESP. Defendants respond that paint is not covered under the ESP and further note that the NVW expired five years prior to Jacobson's request. Defendants' Opposition to Plaintiff's Motion to Remand ("Defendants' Opposition") at 2.

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 39 of 58 PageID #:39

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 16213                    Page 5 of 15

Ford authorizes Ford representatives, and in certain circumstances Ford dealers, to provide free or "goodwill" service, beyond **[*4]** that required by warranties or other agreements, to customers on a case-by-case basis. Decl. of Bruce L. Ayres P 2. In Jacobson's case, Ford and/or GLM apparently declined to provide such service with respect to the paint on Jacobson's vehicle.

As a result, Jacobson brought a class action suit against Ford and GLM in Illinois state court on behalf of "purchasers and/or consumers of Ford motor vehicles who have not been provided with Defendants' secret warranties" and/or who purchased the ESP. Complaint, Count I, P 1. Jacobson specifically alleges that the selectively provided goodwill service constitutes "secret warranties" that violate the Illinois Consumer Fraud and Deceptive Business Practices Act, *id.*, Count I, and the Illinois Uniform Deceptive Trade Practices Act, *id.*, Count II. Jacobson also alleges that defendants breached the ESP because that contract allegedly provides coverage that overlaps the coverage provided by the NVW, resulting in payment for duplicate coverage without consideration or benefits. *Id.*, Count III. Finally, Jacobson asks for a Declaratory Judgment that "an actual dispute and controversy exists between the parties concerning the Plaintiff's **[*5]** and the Class' [sic] rights to the Defendants' secret warranties, corrosion warranty, and 'Extended Service Plan.'" *Id.*, Count IV.

On February 5, 1998, defendants removed the suit to this court. They argue that the court has jurisdiction under 28 U.S.C. § 1332(a)(1) because 1) the amount in controversy requirement has been satisfied, n6 and 2) the parties are diverse. The parties agree that Jacobson and GLM are both citizens of Illinois and that Ford is a citizen of Delaware and Michigan. What they disagree about is whether GLM has been fraudulently joined as a party in this action. If GLM is a proper party defendant, then the court must remand the case to state court because complete diversity would not exist between the named plaintiff Jacobson and the defendants. Defendants, however, argue that GLM's Illinois citizenship is irrelevant because GLM has been fraudulently joined, either because Jacobson herself has no chance of success against GLM or because the vast majority of class members cannot recover from GLM. In the alternative, they argue that even if GLM has been properly joined, this court "may exercise supplemental jurisdiction over this small **[*6]** fraction of the putative class members" who would be eligible to seek relief against GLM in lieu of remanding the case to state court. Defendants' Notice of Removal P 5.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n6 $ 75,000 under 28 U.S.C. § 1332(a).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Jacobson counters that GLM is a proper party to the suit and thus destroys the complete diversity required for this court to have jurisdiction. She further argues that it would be improper for this court to exercise supplemental jurisdiction as defendants suggest because doing so would be inconsistent with the jurisdictional requirements of 28 U.S.C. § 1332. n7

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n7 Jacobson mistakenly cites 28 U.S.C. § 1336, Motion to Remand P 6, which governs the Surface Transportation Board's orders, as the provision that governs supplemental jurisdiction; the correct provision is 28 U.S.C. § 1367.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - **[*7]**

## II. DISCUSSION

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 40 of 58 PageID #:40

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 16213                    Page 6 of 15

☫Federal courts have limited jurisdiction. ☫Removal from state court to federal court is appropriate only where the federal court would have original jurisdiction over the suit. 28 U.S.C. § 1441(b); ☫ Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993). The court determines jurisdictional facts at the time of removal and ignores post-removal pleadings. ☫ Matter of Shell Oil Co., 966 F.2d 1130, 1133 (7th Cir. 1992). Courts presume that a plaintiff's choice of forum is proper and valid and resolve doubts about jurisdiction in favor of remand. ☫ Doe, 985 F.2d at 911. The burden of establishing jurisdiction thus falls on the party seeking removal. ☫ McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 80 L. Ed. 1135, 56 S. Ct. 780 (1936); Doe, 985 F.2d at 911.

Removal is proper under 28 U.S.C. § 1441 when the suit satisfies the amount in controversy requirement, 28 U.S.C. § 1332(a), and there is complete diversity among parties properly joined. 28 U.S.C. § 1332(a)(1); [*8] ☫ Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267, 2 L. Ed. 435 (1806). For diversity jurisdiction to exist in a class action suit, the named class representatives must be diverse from all defendants. ☫ Snyder v. Harris, 394 U.S. 332, 340, 22 L. Ed. 2d 319, 89 S. Ct. 1053 (1969). A case with a non-diverse defendant becomes removable on dismissal of that defendant only if the plaintiff voluntarily dismisses the defendant, 28 U.S.C. § 1446(b); Poulos v. Naas Foods, Inc., 959 F.2d 69, 72 (7th Cir. 1992), or if the defendant was dismissed as fraudulently joined. Poulos, 959 F.2d at 72-73.

## A. Amount in Controversy

Defendants contend that "the jurisdictional amount is properly measured by assessing the cost to defendants of the undifferentiated equitable relief" Jacobson seeks. Notice of Removal P 9. The court agrees and further finds that the undisputed evidence of record establishes that the relief Jacobson seeks would, if granted, exceed $ 75,000. n8

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n8 Jacobson has not disputed defendants' contention that more than $ 75,000--the jurisdictional amount required to establish diversity jurisdiction under 28 U.S.C. § 1332(a)--is in controversy, and defendants' affidavits are unrefuted on this point.

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - -  [*9]

The Seventh Circuit has expressly rejected the position, adopted by some courts, that, for purpose of assessing the amount-in-controversy-requirement, quantification of a request for injunctive relief must be tied to the value of the injunction to the plaintiff. In re Brand Name Prescription Drugs, 123 F.3d 599, 609-10 (7th Cir. 1997) (holding that courts may consider the cost of enforcing the relief a plaintiff seeks in determining whether the value of a suit exceeds the jurisdictional amount required to establish jurisdiction); see also McCarty v. Amoco Pipeline Co., 595 F.2d 389, 391 (7th Cir. 1979) (holding that even if value to plaintiffs of object in litigation was less than federal court's jurisdictional minimum amount, where cost of removal of pipeline as sought by plaintiffs would exceed the jurisdictional amount, removal of case was proper and district court had jurisdiction to hear case). Rather, ☫the Seventh Circuit has identified three other situations-measured by the cost of enforcing relief to the defendant-in which the amount-in-controversy requirement could be met, namely, where the requested injunction would: 1) require some alteration [*10] in the defendant's business practices that would cost more than the statutory amount; 2) force the defendant to forgo a benefit that is worth more than the threshold amount; or 3) entail clerical or ministerial costs of compliance greater than the statutory amount. In re Brand Name Prescription Drugs, 123 F.3d at 609-10 (cautioning that in order to avoid violating the rule prohibiting the aggregation of class members' claims, a court measuring the amount in controversy by the cost to the defendant must measure "the cost to each defendant of an injunction running in favor of one plaintiff").

The injunctive relief Jacobson seeks would, if granted, constitute a common and undivided

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 41 of 58 PageID #:41

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 16213                    Page 7 of 15

interest of the class as a whole, for she apparently seeks to have a court declare that the *general practice* of providing customers with goodwill service on a case-by-case basis is illegal, not just that defendants illegally refused to provide free repaints (or other free service) to some purchasers of 1991 Mercury Sables (or other Ford vehicles). To this end, she seeks a declaratory judgment "directing defendants to account for all secret warranties and payments, with interest thereon, **[*11]** " Complaint, Count IV, P 13F, as well as the "appointment of an officer to administer and distribute the funds to the members of the Class." *Id.*, Count IV, P 13E. Defendants have provided unrefuted affidavits stating that the cost to Ford of complying with the relief Jacobson requests would exceed $ 75,000. For instance, simply identifying owners of 1991 Mercury Sables and notifying them of any extension to their paint warranties would cost more than $ 75,000, Decl. of Joseph C. Bradley P 3; identifying and notifying vehicle owners from all Ford lines regarding extension of their warranties would cost millions of dollars. *Id.* P 4. Complying with the "accounting" and "appointment" requests would clearly impose additional costs. Moreover, Ford has presented unrefuted evidence that if Ford were barred from providing goodwill service, a possible outcome of Jacobson's request for relief, the cost to Ford "in customer loyalty and repeat business" would run "well into the millions of dollars." Ayres Decl. P 5. Accordingly, in light of defendants' unrefuted proof, the court finds that the $ 75,000 amount in controversy has been met.

## B. Fraudulent joinder

The main issue before **[*12]** the court is whether complete diversity exists, a question that depends on whether GLM was fraudulently joined. "Diversity ⚓jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent." ⚓ *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). The removing party bears the burden of proving that the joinder was fraudulent, and must prove either that 1) plaintiff has no chance of success against the non-diverse defendant or 2) plaintiff has fraudulently pled jurisdictional facts. *Poulos, 959 F.2d at 73; see also Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).*

In this case, as the parties agree that GLM, the non-diverse defendant, is a citizen of Illinois, there is no question of fraudulently pled jurisdictional facts. Accordingly, defendants must show that Jacobson and the plaintiff class have no chance of success against GLM *under the current complaint* in order to show fraudulent joinder, not that she and the class have no possible cause of action whatsoever against GLM. *Poulos, 959 F.2d at 74.* As the court finds that defendants have met their burden **[*13]** of showing fraudulent joinder, Jacobson's motion to remand is denied, and GLM's motion to dismiss is granted.

## 1. Jacobson's case against GLM

Defendants have argued that joinder of GLM is fraudulent because Jacobson has no chance of succeeding against GLM under her current complaint. n9 The court agrees. In light of Jacobson's failure to set forth any particularized allegations of fraudulent conduct against GLM, and in light of the legally unsupported theory Jacobson seeks to press, the court finds that she has no chance of succeeding against GLM under any of the three counts of her complaint. Accordingly, the motion to remand is denied, and GLM's motion to dismiss is granted.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n9 The court need only address the first three counts of Jacobson's complaint because Count IV is a plea for declaratory relief and thus does not state a separate cause of action.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

Jacobson's first count, under the Illinois Consumer Fraud Act ("ICFA"), cannot succeed

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 42 of 58 PageID #:42

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 16213

Page 8 of 15

against GLM in light of Jacobson's failure to meet her obligation **[\*14]** of identifying with particularity the fraudulent conduct in which GLM allegedly engaged and in light of the lack of legal support for her theory of liability. ☂To bring a claim under the ICFA, a plaintiff must allege the following: (1) a deceptive act or practice by defendant; (2) an intent by defendant that the plaintiff rely on the deception; and (3) that the deception occurred in a course of conduct involving trade or commerce. _Siegel v. Levy Org. Dev. Co._, 153 Ill. 2d 534, 607 N.E.2d 194, 198, 180 Ill. Dec. 300 (Ill. 1992). Plaintiffs must also plead their claims with particularity, _Gallagher Corp. v. Massachusetts Mut. Life Ins. Co._, 940 F. Supp. 176, 180 (N.D. Ill. 1996) (citing Illinois cases requiring that ICFA claims be pled with particularity), alleging "facts establishing the elements of fraud, including what misrepresentations were made, when they were made, who made the misrepresentations, and to whom they were made." _Perona v. Volkswagen of America, Inc._, 292 Ill. App. 3d 59, 684 N.E.2d 859, 864, 225 Ill. Dec. 868 (Ill. App. Ct. 1997).

Jacobson's complaint is so deficient as to any particularized allegations of fraud **[\*15]** against GLM that it fails even to allege that Jacobson bought her 1991 Mercury Sable from GLM, much less to identify who sold her the NVW and/or the ESP, what misrepresentation or omission that person(s) then made, who denied her request for a repaint, or what misrepresentation or omission that person(s) made. n10 Moreover, neither the written warranties-the NVW and the ESP-nor the "secret warranties" to which Jacobson refers are identified as warranties offered by GLM specifically, n11 nor does Jacobson indicate what acts GLM took to "conceal" the "secret warranties." Rather, Jacobson rests on two allegations and an affidavit that are far too general to meet the particularity requirement. n12 Many of the aforementioned omissions go beyond a simple or technical pleading failure to the very heart of Jacobson's claim-and thus to GLM's argument for fraudulent joinder.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n10 Jacobson's attempt to identify GLM in connection with some of these allegations in her reply brief presumably comes too late. The court's decision on the propriety of removal must be made at the time of removal; moreover, it is axiomatic that a complaint cannot be amended by way of a reply brief. _See generally Car Carriers, Inc. v. Ford Motor Co._, 745 F.2d 1101, 1107 (7th Cir. 1984) (holding that a complaint "may not be amended by the briefs in opposition to a motion to dismiss").

Even looking beyond the pleadings, however, and assuming the truth of the allegations contained in the affidavit Jacobson attached to her reply brief, Jacobson has still failed to allege with any particularity what fraudulent conduct GLM in particular engaged in, having merely stated that: 1) she bought her vehicle from GLM on September 11, 1991; 2) she "communicated" the problem with the car's paint to GLM in August of 1997; 3) GLM denied her "warranty coverage to repair this problem"; and 4) GLM "merely suggested that they and Ford would only agree to pay for about half of the repair costs." Decl. of Ruth Jacobson PP 2-3. **[\*16]**

n11 Indeed, the documentary evidence would seem to belie such a claim. The NVW and the ESP, to which Jacobson refers in her complaint, clearly bear the imprint of Ford, not any of its individual dealerships, and it is Ford's acknowledged policy to provide selective "goodwill" service on a case-by-case basis.

n12 Those allegations are as follows: 1) "unknown to the Plaintiff and the Class the Defendants, at all times relevant herein, had an undisclosed and concealed practice and policy of secret warranties which covered the Plaintiff's and the Class' [sic] repaint, replacement and damages to their motor vehicles, but would not deliver or provide the same to said persons," Complaint, Count I, P 4; and 2) "Defendants' concealment, nondisclosure and deception concerning their secret warranties and their misrepresentations and/or omissions concerning same, are an unfair method of competition, creates a likelihood of confusion and misunderstanding, and is an unfair act and practice in violation of the

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 43 of 58 PageID #:43

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 16213                    Page 9 of 15

Consumer Fraud and Deceptive Business Act." *Id.* P 13.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

Moreover, Jacobson's pleading deficiencies **[\*17]** aside, n13 as far as the court has been able to ascertain, there is no legal support for the scenario on which Jacobson seeks to rest liability. Jacobson in effect claims that the fraudulent act committed by GLM (and Ford) was the failure to tell her, presumably when she purchased the NVW, the ESP, and the 1991 Mercury Sable, that Ford sometimes provides, on a case-by-case basis, free repair and/or replacement services to its customers beyond that required by warranties or other agreements. This is a widespread and common customer service practice, undoubtedly used not only by automobile manufacturers but also by businesses ranging from neighborhood stores to Fortune 500 companies. Absent any intimation in Jacobson's complaint that GLM failed to tell her about and/or provide her with this "secret warranty" on some prohibited basis, n14 the court is aware of no legal authority supporting such a claim, and Jacobson has not refuted the case law GLM has cited in support of its point. Accordingly, the court finds that Count I does not, as a matter of law, state a claim. n15

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n13 The court reiterates that it is not relying on simple pleading defects in the complaint to deny the motion to remand and grant the motion to dismiss. Although the Seventh Circuit does not appear to have spoken directly to this issue, *Poulos* might be read to suggest that courts should not rely on technical pleading defects. See *Poulos, 959 F.2d 69, 74 (7th Cir. 1992)* (finding fraudulent joinder in noting that "at no point in the state or federal proceedings did Poulos attempt to fill in the gaps in his complaint. Thus we may conclude that the joinder of RHM was fraudulent without deciding whether Poulos could have cured the problem with his complaint by amending it while in federal court"). As at least one other circuit court has held that district courts may "pierce the pleadings," albeit in their discretion, the court believes the safer course is not to rest its decision on simple pleading defects. See ***Burden v. General Dynamics Corp., 60 F.3d 213, 217 (5th Cir. 1995)*** (holding that "in testing for fraudulent joinder the district court in its discretion may 'pierce the pleadings,' albeit in so doing the court should not conduct an evidentiary hearing but, based on appropriate documentation in addition to the pleadings, should instead resolve all disputed questions of fact in favor of the plaintiff"). The omissions in Jacobson's complaint are so numerous and significant as to surpass anything that could be called a simple pleading defect. **[\*18]**

n14 Such as race or gender-and there is absolutely no intimation in the complaint of any such motivation.

n15 Despite having been given the opportunity to respond to GLM's motion to dismiss, which included the argument that all counts failed to state a claim, Jacobson failed even to address most of GLM's arguments, including its argument that the conduct of which she complains does not violate the ICFA as a matter of law. When the court ruled on Jacobson's motion to 1) reset the briefing schedule on her motion to remand and 2) stay GLM's motion to dismiss, it declined to stay the motion to dismiss and ordered Jacobson to respond. Although Jacobson filed a reply to the motion to remand, she did not fully address the motion to dismiss, having neither filed a separate response to that motion nor included her response to each point raised in the motion to dismiss in her reply brief on the motion to remand. Rather, Jacobson stated that she was "responding to Defendants' motion to dismiss to the extent that it addresses Plaintiffs' motion to remand" and "reserving the right to respond to all remaining portions of defendants' motion to dismiss if this Court denies Plaintiffs' motion to remand." Pls.' Reply to the Mot. to Remand at 1 n.1. Unfortunately for Jacobson, GLM's motion to dismiss went, in its entirety, to the question of fraudulent joinder, and so she should have responded to each point raised therein.

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 44 of 58 PageID #:44

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 16213

Page 10 of 15

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - **[*19]**

In light of Jacobson's failure to include crucial, particularized allegations, and in light of the lack of legal support for her theory of liability, the court finds that Jacobson has no chance of success against GLM on Count I as set forth in her complaint.

Nor does Jacobson's second count fare any better. In Count II, Jacobson alleges that "Defendants' concealment, nondisclosure and deception concerning their secret warranties and their misrepresentations and/or omissions concerning same, are an unfair method of competition, creates [sic] a likelihood of confusion and misunderstanding, and is [sic] an unfair act and practice in violation of the Uniform Deceptive [Trade] Practices Act." Complaint, Count II, P 13. As an initial matter, the court notes that ⊤the DTPA permits private suits for injunctive relief but does not does not provide a cause of action for damages. *See, e.g., Greenberg v. United Airlines*, 206 Ill. App. 3d 40, 563 N.E.2d 1031, 1036, 150 Ill. Dec. 904 (Ill. App. Ct. 1990). Jacobson's request for monetary relief is thus inappropriate as to this count.

The court further finds that Jacobson's complaint fails to state a claim under any of the **[*20]** three provisions of the DTPA, 815 ILL. COMP. STAT. § 510/2(5), (7), and (12), that she cites for the same basic reasons that her ICFA count fails: her complaint fails to ascribe any particular conduct to GLM, and the practice of which she complains is not, as a matter of law, illegal. Jacobson has pointed to no representation or conduct by GLM that would satisfy subsection (5), (7), or (12), n16 and the court is aware of no authority supporting liability under the DTPA for the scenario Jacobson advances. n17

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n16 ⊤Subsection (5) provides that a person engages in a deceptive trade practice by "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have. . . ." Jacobson's complaint identifies no representation made by GLM concerning any characteristic, benefit, etc. of her vehicle or warranty coverage that the vehicle or warranty coverage lacked.

Subsection (7) references "representations that goods or services are a particular standard, quality or grade or that goods are a particular style or model, if they are of another." Jacobson's complaint identifies no representation made by GLM concerning the quality, etc. of her vehicle or warranty coverage.

Subsection (12) references "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Although Jacobson uses the phrase "likelihood of confusion and misunderstanding" in her complaint, she does not include any allegations indicating what GLM's role was in the complained-of conduct of concealing, failing to disclose, and/or misrepresenting the "secret warranties." Moreover, the court finds that, as a matter of law, failure to mention the Ford customer satisfaction measure at issue here would not create a likelihood of confusion or misunderstanding. **[*21]**

n17 Once again, Jacobson has failed to address the arguments GLM raises with respect to the DTPA in its motion to dismiss.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Finally, the court finds that Jacobson's third count, breach of contract, also fails. In Count III, Jacobson alleges that the ESP in some, unspecified way "overlaps" the NVW, "is a duplication thereof and provides no consideration or benefit(s) therefore, i.e., it is illusory." *Id*. P 14. As a result, Jacobson contends, GLM and Ford have "breached" the ESP "in that they have provided no consideration or benefits for the overlap coverage." *Id*. P 15.

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 45 of 58 PageID #:45

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 16213

Page 11 of 15

As an initial matter, the court notes that the "overlap" coverage allegation, like the repeated allegation that GLM and Ford had an "undisclosed and concealed policy and practice of secret warranties," seems to invoke the specter of fraud, not breach of contract, by claiming that Jacobson paid for some type of coverage twice. Treated as a fraud claim, however, the "overlap" coverage claim fails because it has not been pled with the particularity required for a cause of action under either Illinois common law fraud or the **[*22]** ICFA. _Connick v. Suzuki Motor Co._, 174 Ill. 2d 482, 675 N.E.2d 584, 593, 221 Ill. Dec. 389 (Ill. 1996) (holding that "a complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity required under common law fraud"). Jacobson does not identify a single item that is covered under both the NVW and the ESP.

Treated as titled-that is, as a breach-of-contract claim-the "overlap" coverage claim also fails because Count III does not actually allege any action by GLM that would or could constitute a breach of the ESP. Jacobson does not allege, for instance, that the ESP covered the repaint she requested, much less that GLM refused to honor a request for a repaint under the ESP. n18 Nor does Jacobson allege that GLM failed to provide her with any other service covered by the ESP. Rather, she contends that an alleged duplication of coverage n19 and/or a lack of consideration render the contract illusory. As Jacobson has provided the court with no authority for the proposition that claiming a contract is _illusory_ may state a claim for _breach_ of that contract, the court finds that Count III also fails. n20

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n18 Nor, for that matter, does GLM appear to be obligated to provide such a repaint under the ESP, which expressly states that "paint" is one of the "Components _NOT_ Covered." GLM's Motion to Dismiss Ex. B. The court notes that consideration of the NVW and ESP contracts is appropriate since Jacobson referenced them in her complaint. **[*23]**

n19 The court notes that Jacobson herself references the section of the ESP entitled "Other Parts and Services Not Covered," which includes "repairs covered by the Ford New Vehicle Warranty or Recalls." Complaint, Count III, P 13.

n20 Indeed, such a claim appears to be a non sequitur. If the contract is illusory, it does not exist, and therefore presumably it cannot be breached. Once again, Jacobson's claim appears to sound in fraud rather than breach of contract, but as the court has explained above, treated as a fraud claim, it would fail the particularity requirement for fraud claims, whether common law or statutory, under Illinois law.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

As Jacobson has no possibility of succeeding against GLM on either counts I, II, or III of her current complaint, the court must find that joinder of GLM is fraudulent.

## 2. The Class's case against GLM

GLM and Ford alternatively argue that GLM has been fraudulently joined because the vast majority of the proposed class would have a claim only against Ford. Although the cases defendants cite support their position, a review of the case law on **[*24]** this issue shows that the Eleventh Circuit has repudiated the position taken in the unreported Alabama district court cases defendants cite, and several other courts outside that circuit likewise disagree with the Alabama decisions. Although defendants' position has some appeal, the court finds opposing cases more persuasive. Thus, the court will not rely on this ground to find fraudulent joinder.

Defendants contend that even if Jacobson has a legitimate claim against GLM, the overwhelming majority of the plaintiff class has a claim only against Ford, not GLM, making GLM fraudulently joined as a defendant where the class is concerned. Defendants' Opposition

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 46 of 58 PageID #:46

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 16213

Page 12 of 15

at 5-8. Jacobson responds by arguing that GLM is a significant defendant because the plaintiff class contains 676 or more potential members-the number of individuals who, by defendants' own count, bought Lincoln-Mercury vehicles from GLM in 1991-each of whom may have the same claims against GLM as Jacobson. Plaintiff's Reply at 6.

Jacobson's proposed class, as outlined in her complaint, includes "purchasers and/or consumers of Ford motor vehicles who have not been provided with Defendants' secret warranties, . . . for service, [*25] repairs or replacement of said motor vehicles, and/or who purchased Defendants' 'Extended Service Plan.'" Complaint, Count I, P 1. On its face, this complaint appears to propose a nationwide class. Although Jacobson intimates in her reply that the proposed class consists of the 676 or more persons who bought Lincoln-Mercury vehicles from GLM in 1991, the court is not convinced that Jacobson has given up a nationwide class, especially in light of the broader "proposed class" language of her complaint; the fact that she continues to seek relief that would, if granted, have nationwide impact; and the fact that she has not sought to file an amended complaint. The court has thus approached this issue on the working assumption of a nationwide class.

From this perspective, it is clear that most of the members of the putative class could obtain relief from only one of the two named defendants: Ford, not GLM, because only class members who bought their vehicles from GLM could obtain any relief against that defendant. Ford operates nationwide, whereas GLM is a single Ford dealer. n21 Although all members of the proposed class have a connection with Ford, the vast majority have no link to GLM, [*26] because they are "purchasers and/or consumers of Ford motor vehicles" who bought their cars and/or ESPs from or through a dealer other than GLM.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n21 Defendants have supplied an affidavit averring that there as of February 1998, there were approximately 5071 Ford and Lincoln-Mercury dealerships in the U.S., of which about 269 were located in Illinois. Decl. of Matt Falerios P 3. The court notes that GLM was terminated as a Lincoln-Mercury dealer effective November 24, 1997, id., but was a Lincoln-Mercury dealer at the time Jacobson bought her Mercury Sable and at the time she requested the repaint.

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

This fact, however, does not make GLM fraudulently joined as a defendant in the suit. As an initial matter, the court recognizes that several other courts have reached the conclusion for which defendants contend in similar class-action cases where the plaintiffs sought to name a single in-state dealer of a product as a defendant along with the manufacturer of that product. See, e.g., Arnold v. Ford Motor Co., [*27] 1995 U.S. Dist. LEXIS 21487, *4-5 (N.D. Ala. 1995) (holding that joinder of in-state Ford dealer was fraudulent as to majority of members of putative nationwide class of all "persons who had purchased 1990 Ford F-250 pick-up trucks"); Seale v. Nissan Motor Acceptance Co., 1996 U.S. Dist. LEXIS 21945, 1996 WL 539899, *1 (S.D. Ala. 1996) (holding that joinder of instate Nissan dealer was fraudulent because 83% of putative class members had no possibility of recovering against that dealer), Warren v. Playmobil U.S.A., Inc., 1996 U.S. Dist. LEXIS 22191, *6-7 (N.D. Ala. 1996) (holding that joinder of one in-state toy dealer, Homewood Toy, was fraudulent as to majority of members of putative statewide class of "Alabama residents who have at any time purchased products manufactured, distributed, and sold by Playmobil and who were therefore the victims of the illegal practices of Playmobil").

The court declines to follow the cases defendants cite, however, in light of the fact that the bulk of authority goes the other way. First and most importantly, the Alabama cases on which defendants rely were effectively overruled by the Eleventh Circuit in Triggs v. John Crump Toyota, Inc., 154 F.3d 1284 (11th Cir. 1998). [*28] In Triggs, an Alabama resident who had leased a car through Omni, a Florida lessor, brought a class action suit against Omni and

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 47 of 58 PageID #:47
Get a Document - by Citation - 1999 U.S. Dist. LEXIS 16213

Page 13 of 15

Crump, an Alabama car dealership, alleging that Crump as well as other dealerships sold cars in Alabama to Omni at inflated prices pursuant to a scheme whereby Omni then leased the cars to the class and passed on the excess cost to them. _Id. at 1286._ The district court held that Crump had been fraudulently joined because, although all members of the putative class had dealt with the lessor, only 2% of the class had dealt through Crump. _Id._ The Eleventh Circuit, presented with the question of whether "defendant Crump has been fraudulently joined merely because 98% of the members of the putative plaintiff class would have no claim against Crump, notwithstanding the fact that the named plaintiff has a potential claim to impose joint and several liability on defendants Crump and Omni," declined to find fraudulent joinder, holding that doing so on this basis would be "inconsistent with the well-settled rule for class actions that a court should consider only the citizenship of the named parties to determine whether there is diversity jurisdiction. **[*29]** " _Id. at 1288._ In so holding, the court specifically discussed-and disapproved-the line of Alabama cases that held to the contrary and that also found supplemental jurisdiction. _Id. at 1290._ Other courts have also rejected _Arnold_ and its progeny. _See, e.g., Ren-Dan Farms, Inc. v. Monsanto Co., 952 F. Supp. 370, 375 (W.D. La. 1997)_ (holding that joinder of two in-state defendants in false advertising suit was not fraudulent even if most of the putative class members might not have a claim against these defendants because "no possibility" does not mean "'only a small possibility,' 'a possibility with limited recovery,' or 'possible for some plaintiffs, but not for others'"); _Atchison v. Woodmen of the World Ins. Soc'y, 982 F. Supp. 835, 838 (S.D. Ala. 1997)_ (rejecting the bifurcated fraudulent joinder analysis adopted by other Alabama courts in _Arnold_ and its progeny).

Although the court believes that defendants' position has appeal, it believes that the cases rejecting the _Arnold_ line of analysis are more persuasive. The court thus also holds that fraudulent joinder cannot be established merely by showing **[*30]** that most of the proposed class would be unable to obtain relief against one named defendant. Such a holding "stands the traditional class action diversity inquiry on its head," for the first step in such an inquiry should be whether there is complete diversity between the named plaintiff and the defendants, not the relationship between unnamed class members and the defendants. _Atchison, 982 F. Supp. at 838._

Nevertheless, as the court has found that the named plaintiff, Jacobson, has no possibility of success against GLM on any of the counts in her complaint, the class claims cannot survive. Jacobson has provided this court with no authority to suggest that class claims survive in the absence of a named plaintiff, and the court is aware of none.

## C. Supplemental Jurisdiction

The court has found that GLM was fraudulently joined in this action and has granted GLM's motion to dismiss in addition to denying Jacobson's motion to remand. As GLM is no longer a defendant in this action, it is clear that the court may properly entertain both Jacobson's and the class's claims against Ford pursuant to its diversity jurisdiction. Accordingly, the court believes there **[*31]** is no need to consider whether it should exercise supplemental jurisdiction, for all of the putative class members may pursue their claims against Ford irrespective of whether they purchased their vehicles and/or warranties from GLM or another Ford dealership.

The court notes, however, that to the extent defendants suggest that this court may exercise supplemental jurisdiction over claims against GLM, n22 the court disagrees, for doing so would be inconsistent with the exercise of its diversity jurisdiction.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n22 Defendants initially argued that: "although plaintiff's inability to obtain the requested classwide relief against GLM renders this in-state defendant fraudulently joined _in toto_, even if GLM is deemed not to be fraudulently joined as to plaintiff Jacobson herself (and the

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 48 of 58 PageID #:48

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 16213

Page 14 of 15

comparatively small handful of putative class members who bought vehicles from GLM), the Court may exercise supplemental jurisdiction over this small fraction of the putative class members." Notice of Removal P 5. It is not clear to the court whether defendants seek to argue that supplemental jurisdiction may be exercised over claims *against* GLM or claims against Ford by those class members who happen to have bought their vehicles and/or warranties from GLM. If the former, the court believes that the exercise of supplemental jurisdiction is inconsistent with the requirements of Section 1367; if the latter, the court notes that exercising supplemental jurisdiction is unnecessary, for original (diversity) jurisdiction exists over Jacobson's and the class's claims against Ford.

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - ⚓ **[\*32]**

Federal district courts have supplemental jurisdiction over claims that are part of a case or controversy over which original jurisdiction exists. 28 U.S.C. § 1367(a). ⚓Supplemental jurisdiction does not, however, extend to claims by plaintiffs against persons made parties under FED. R. CIV. P. 14, 19, 20, or 24 when: 1) original jurisdiction is based on 28 U.S.C. § 1332, the diversity jurisdiction provision; and 2) supplemental jurisdiction "would be inconsistent with the jurisdictional requirements" of Section 1332. *Id.* § 1367(b). Parties permissively joined under FED. R. CIV. P. 20 are included in this exception to supplemental jurisdiction, but parties joined as part of a class under FED. R. CIV. P. 23(a) are not. *Id.*

The exception to supplemental jurisdiction delineated in Section 1367(b) prevents the court from exercising supplemental jurisdiction over claims against GLM. Because GLM would presumably be considered permissively joined as a defendant under FED. R. CIV. P. 20-not as a member of a class under FED. R. CIV. P. 23(a)-and because exercising supplemental jurisdiction over claims against GLM would be inconsistent **[\*33]** with Section 1332, the court cannot exercise supplemental jurisdiction over those claims. Defendants' citation to Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928, 930 (7th Cir. 1996), is inapposite because in that case the court exercised supplemental jurisdiction over additional *plaintiffs*, not additional defendants.

Moreover, the court disagrees with *Arnold, Warren,* and *Seale* to the extent that they hold that supplemental jurisdiction may be exercised over claims against the in-state defendant, given that these holdings appear to conflict with the limits imposed on the exercise of supplemental jurisdiction in diversity cases. Arnold, 1995 U.S. Dist. LEXIS 21487, at \*6-8; Warren, 1996 U.S. Dist. LEXIS 22191, at \*7; Seale, 1996 WL 539899, at \*1. Each of these cases relies on the same problematic reasoning set forth in *Arnold,* namely, that the claims against the non-diverse defendant were joined to the claims against the diverse defendant by virtue of Rule 23, the class action rule. Arnold, 1995 U.S. Dist. LEXIS 21487 at \*7. But the court believes that Rule 20, not **[\*34]** Rule 23, is the operative joinder rule in such a case, rendering the exercise of supplemental jurisdiction improper. *Arnold* appears to have turned the Section 1367 analysis on its head, ignoring how the *defendant* in question was joined. *See also* Taylor v. American Tobacco Co., 983 F. Supp. 686, 691 (E.D. Mich. 1997) (criticizing the supplemental jurisdiction analysis of *Arnold*); Ren-Dan Farms, 952 F. Supp. at 376 (W.D. La. 1997) (same).

## III. CONCLUSION

For the reasons stated above, Jacobson's motion to remand is denied, and GLM's motion to dismiss is granted. The parties shall appear for a status hearing on October 19, 1999 at 9:30 a.m.

ENTER:

JOAN B. GOTTSCHALL

United States District Judge

# EXHIBIT F

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 50 of 58 PageID #:50

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 5827

Page 1 of 6

Service: **LEXSEE®**
Citation: **2000 U.S. Dist. LEXIS 5827**

*2000 U.S. Dist. LEXIS 5827, ***

RIMA ZANAYED, et al., Plaintiffs, GERTLER & GERTLER, LTD. et al., Defendants.

No. 99 C 5150

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2000 U.S. Dist. LEXIS 5827

March 17, 2000, Decided
March 20, 2000, Docketed

**DISPOSITION:** **[*1]** Defendant's motion to dismiss granted in part and denied in part.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant law firm moved to dismiss plaintiff's claims alleging that defendant violated Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505 et seq., and Fair Debt Collection Practices Act, 15 U.S.C.S. § 1692 et seq., in assisting collection agency in collection of plaintiff's debt.

**OVERVIEW:** Defendant law firm represented collection agency in collection of plaintiff's debt. The court dismissed plaintiff's claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (CFA), 815 Ill. Comp. Stat. § 505 et seq., because the CFA did not apply to a claim against an attorney engaged in the practice of law in a judicial proceeding. Plaintiff's claims that defendant violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.S. § 1692 et seq., when it issued wage deduction summonses to her employer were dismissed because the summonses were clearly excluded communications under 15 U.S.C.S. § 1692c(b) and the procedural requirements of the CFA did not apply. Plaintiff's claim that the wage deduction summons disclosed a false creditor was not dismissed because if a false creditor was named, a violation of the FDCPA could have been found and there was a question of fact regarding when the summons was served.

**OUTCOME:** Motion granted in part because Illinois Consumer Fraud and Deceptive Business Practices Act did not apply to defendant and wage deduction summonses were clearly excluded communications under Fair Debt Collection Practices Act; motion denied in part because question of fact remained in claim that wage deduction summons disclosed false creditor.

**CORE TERMS:** summons, wage, practice of law, notice, judicial remedy, postjudgment, motion to dismiss, matter of law, Illinois' Consumer Fraud Act, wage garnishment, et seq, post-judgment, effectuate, Deceptive Practices Act, collection agency, collection, Consumer Fraud Act, necessary to effectuate, consumer protection, consumer, garnishment, communicate, confusing, collector, mailed, settlement, discovery, offering, odds

## CORE CONCEPTS – ♦ Hide Concepts

Civil Procedure : Pleading & Practice : Defenses, Objections & Demurrers : Failure to State Claim or Cause of Action

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 51 of 58 PageID #:51

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 5827          Page 2 of 6

⚓In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court must accept as true all well pleaded factual allegations in the complaint and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. A motion to dismiss may be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle to relief. A plaintiff may plead conclusions but those conclusions must provide the defendant with at least minimal notice of the claim.

Torts : Business & Employment Torts : Fraud & Deceit

⚓Illinois courts, including the Illinois Supreme Court, consistently have held that even under the most literal interpretation of the statute, the Illinois Consumer Fraud and Deceptive Business Practices Act (CFA), 815 Ill. Comp. Stat. § 505 et seq., does not apply to the conduct of an attorney engaged in the actual practice of law. The legislature's use of "trade or commerce" in defining the application of the CFA was not meant to include the actual practice of law. Illinois has rejected the proposition that the practice of law can be equated with an ordinary commercial enterprise.

Torts : Business & Employment Torts : Unfair Business Practices

⚓The Fair Debt Collection Practices Act, 15 U.S.C.S. § 1692 et seq., specifically provides that except as reasonable necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, any person other than the consumer. 15 U.S.C.S. § 1692c(b).

Torts : Business & Employment Torts : Fraud & Deceit

⚓    See 815 Ill. Comp. Stat. § 505/2I.

Torts : Business & Employment Torts : Unfair Business Practices

⚓The Fair Debt Collection Practices Act, 15 U.S.C.S. § 1692 et seq., provides that an action to enforce liability created by the Act may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violations occurs. 15 U.S.C.S. § 1692k(d).

**COUNSEL:** For RIMA ZANAYED, plaintiff: Christopher V. Langone, Joel D. Dabisch, Langone Law Firm, Lance A. Raphael, Consumer Advocacy Center, Chicago, IL.

For GERTLER & GERTLER, LTD., defendant: Richard William Austin, Matthew James Egan, Michael Anthony Clarke, Pretzel & Stouffer, Chtd., Chicago, IL.

For FIRST REVENUE ASSURANCE, defendant: Thomas R. Stilp, Joseph Shaw Messer, Messer & Stilp, Chicago, IL.

**JUDGES:** HON. RONALD A. GUZMAN, United States Judge.

**OPINIONBY:** RONALD A. GUZMAN

## OPINION: MEMORANDUM OPINION AND ORDER

Pending is defendant, the law firm of Gertler & Gertler, Ltd. ("Gertler") motion to dismiss Counts I, II and V of plaintiff Rima Zanayed's complaint pursuant to Fed. R. Civ. Proc. 12(b) (6). For the reasons set forth below this motion is granted in part and denied in part.

## BACKGROUND FACTS

The following facts are taken from plaintiff's complaint. Only Counts I, II and V are directed

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 52 of 58 PageID #:52

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 5827

Page 3 of 6

to the Gertler firm. Sometime in 1997, FBS Chevy Chase Bank engaged a collection agency to collect a debt from plaintiff. This collection agency engaged the services of the Gertler firm to assist in collection **[*2]** of plaintiff's debt. On or about November 3, 1997, Gertler filed suit against Zanayed on behalf of FBS Chevy Chase Bank. The lawsuit sought recovery of $ 5,854.86. On or about February 9, 1998, the Gertler firm obtained a default judgment against Zanayed in the amount of $ 5,854.86. On or about June 9, 1998, Gertler sent a wage deduction notice to Zanayed's employer LaSalle Bank, N.A. seeking to collect the alleged debt.

Sometime between November 3, 1997 and March 11, 1999, American Banco took over as the collection agency on Zanayed's account. On March 11, 1999 Ms. Zanayed received a letter from American Banco offering a negotiated settlement on her account. A subsequent fax offering a settlement on the balance of $ 5,404.17 for the amount of $ 1,891.46 payable within 24 hours was received by Zanayed. That same day, Zanayed called Denise, an agent of American Banco, to accept the offer. Later that day Denise told Zanayed that American Banco was not going to accept the money or a settlement of any type and any money sent would be simply applied to her current balance. On March 29, 1999, a second wage deduction summons was forwarded to Zanayed's employer seeking to collect the alleged **[*3]** debt by the Gertler firm.

Count I of plaintiff's complaint alleges that the Gertler firm violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("the CFA"), 815 ILCS § 505, et seq. when they allegedly communicated with Zanayed's employer, LaSalle National Bank, without giving her five days notice of their intention to do such as provided by 815 ILCS § 50521. Count II of Zanayed's complaint alleges violations of the Fair Debt Collection Practices Act, ("the FDCPA") 15 U.S.C. § 1692 et seq. when the Gertler firm issued a post-judgment wage garnishment summons to plaintiff's employer without giving plaintiff five days notice of their intention to issue the summons. Count IV alleges that the Gertler firm violated the FDCPA, 15 U.S.C. § 1629 et seq. in that it disclosed a false creditor, interfered with a March 25, 1999 settlement agreement between American Banco and Zanayed, and used a defective wage deduction affidavit which disclosed a false creditor and was not signed.

## DISCUSSION

☩In considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all well pleaded factual allegations in the **[*4]** complaint and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. _Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1324 (7th Cir. 1993)_. A motion to dismiss may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle to relief" _Conley v. Gibson,_ 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). A plaintiff may plead conclusions but those conclusions "must provide the defendant with at least minimal notice of the claim." _Jackson v. Marion County,_ 66 F.3d 151, 154 (7th Cir. 1995).

The Gertler firm moves to dismiss Count I of plaintiffs' complaint arguing that it is well settled that Illinois' Consumer Fraud Act does not apply to a claim against an attorney engaged in the practice of law. This court agrees. ☩Illinois courts, including the Illinois Supreme Court, consistently have held that even under the most literal interpretation of the statute, the Consumer Fraud Act does not apply to the conduct of an attorney engaged in the actual practice of law. _Cripe v. Leiter,_ 184 Ill. 2d 185, 703 N.E.2d 100, 105, 234 Ill. Dec. 488 (1998); **[*5]** _**Frahm v. Urkovich, 113 Ill. App. 3d 580, 447 N.E.2d 1007, 1009, 69 Ill. Dec. 572 (1st Dist. 1983)**_. As the _Frahm_ court stated "We conclude that the legislature's use of "trade or commerce" in defining the application of the Act was not meant to include the actual practice of law." **447 N.E.2d at 1011.** Illinois has rejected the proposition that the practice of law can be equated with an ordinary commercial enterprise. _**Frahm, 447 N.E.2d at 1010.**_

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 53 of 58 PageID #:53

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 5827

Page 4 of 6

The key to Illinois' treatment of this issue lies in the courts' recognition that attorneys are particularly subject to special regulation and license requirements of the Illinois Supreme Court and its agencies. *Cripe, 703 N.E.2d at 105; Guess v. Brophy, 164 Ill. App. 3d 75, 517 N.E.2d 693, 697, 115 Ill. Dec. 282 (4th Dist. 1987).* As the Illinois Supreme Court stated, "there appears to be little dispute...that consumer protection statutes do not apply to claims arising of the of the 'actual practice of law.'" *Cripe, 703 N.E.2d at 105.*

To date no reviewing court in Illinois has allowed a Consumer Fraud Act claim against **[*6]** an attorney arising out of the actual practice of law. Indeed, in its most recent decision of the issue the Illinois Supreme Court noted "there appears to be little dispute...that consumer protection statutes do not apply to claims arising out the 'actual practice of law.'" *Cripe v. Leiter, 184 Ill. 2d 185, 703 N.E.2d 100, 105, 234 Ill. Dec. 488.* Zanayed's argument that "legal representatives" means the statute would apply to attorneys engaged in the practice of law "regardless whether they are representing someone in court or out of court is contrary to the rulings in *Cripe v. Leiter, 184 Ill. 2d 185, 703 N.E.2d 100, 105, 234 Ill. Dec. 488 (1998); Lurz v. Panek, 172 Ill. App. 3d 915, 527 N.E.2d 663, 670, 123 Ill. Dec. 200 (2d Dist. 1998); Pucci v. Santi, 711 F. Supp. 916, 926 (N.D. Ill. 1989); and Roy v. Smith, 735 F. Supp. 313 (C.D. Ill. 1990).* To be sure, attorneys retained by debt collection agencies to collect delinquent debts have qualified as "debt collectors" under the FDCPA, see *Blakemore v. Pekay, 895 F. Supp. 972 (N.D. Ill. 1995)* but Illinois' Supreme court has refused **[*7]** to make such a determination as to attorneys engaged in the practice of law in a judicial proceeding under Illinois' Consumer Fraud Act.

Count II of Zanayed's complaint alleges that the Gertler firm violated three sections of the FDCPA, *15 U.S.C. § 1692c,* when it issued the wage deduction summonses to her employer. Zanayed first argues that the wage garnishment summons is a "communication with a third party" which is prohibited under section *15 U.S.C. § 1692c*(b). Second, Zanayed argues that this wage garnishiment summons should not have been mailed to LaSalle Bank without giving her five days written notice of their intention to contact the employer as provided for under Illinois' Consumer Fraud Act, 815 ILCS § 505/2I. Zanayed claims that this too is a violation of 1692c of the FDPA. Finally, Zanayed argues that the mailing of the garnishment summons without five days notice was not something "reasonably necessary to effectuate a post-judgment judicial remedy" and, therefore, is not one of the specified communications listed in section 1692c(b) of the FDCPA. This court disagrees.

Plaintiff's first argument, that a wage deduction summons **[*8]** is a prohibited communication under *15 U.S.C. § 1692c*(b) fails as a matter of law. ⚓The FDCPA specifically provides, in relevant part:

> (b) Communications with third parties. Except as provided in section 804...or as reasonable necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, any person other than the consumer... *15 U.S.C. § 1692c*(b).

This provision clearly excludes communications which are necessary to "effectuate a postjudgment judicial remedy" in this instance, a wage deduction summons to the employer of a judgment debtor. It is undisputed that a postjudgment judicial remedy was involved in the instant case. Zanayed's argument is not only at odds with the language of the federal statute but is at odds with Illinois' statute which requires a wage deduction notice to an employer to effectuate the postjudgment judicial remedy of a wage deduction. 735 ILCS § 5/12-801-805. Thus, plaintiff's first argument is insufficient as a matter of law.

Plaintiff's second argument contends that the garnishment summons served upon LaSalle Bank **[*9]** should not have been mailed without five days prior notice as provided for under Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS § 505/2I. This section

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 54 of 58 PageID #:54

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 5827

Page 5 of 6

provides the following:



§ 2I. No person may attempt to collect an obligations by communicating in any way with an employer with regard to the obligations owing by one of his employees unless there has been a default of the payment of the obligation for at least 30 days and at least 5 days notice of the intention to communicate with the employer has been given to the employee. Any person violating this Section commits an unlawful practice within the meaning of this Act and, in addition, is liable in a civil action for damages resulting to the employee about whom such a communication is wrongfully made.

Because the Illinois Supreme Court has concluded that Illinois' Consumer Fraud and Deceptive Practices Act does not extend to attorneys engaged in the actual practice of law this provision cannot be applied to the conduct complained of by plaintiff. Moreover, Illinois has a very specific statute which sets forth the procedures to be followed in collection cases. See 735 ILCS § 5/12-801-805. Thus, plaintiff's **[*10]** argument is insufficient as a matter of law.

Plaintiff's final argument contends that the wage deduction summons issued by Gertler were "unnecessary" because if given five days prior notice, she would have "paid down" or satisfied the judgment debt. This argument lacks factual support and cannot be concluded to support a claim for relief under the FDCPA. As the complaint states Zanayad did not satisfy the debt either when it was incurred, during the nine months before suit was filed, or within five days of the issuance of the June, 1998 wage deduction summons. Moreover, the FDCPA clearly excludes communications which are reasonably necessary to "effectuate a postjudment remedy." The wage deduction summons in this case was necessary to effectuate the postjudgment judicial remedy of wage garnishment.

Plaintiff's reliance on _Mendus v. Morgan & Associates, P.C._ 1999 OK CIV APP 137, 994 P.2d 83 (Div. 4, 1999), 1999 WL 1288923, is not only confusing but misplaced because _Mendus_ did not claim, as plaintiff does here, that the service of the summons violated the limitations on debtor contact set forth in 15 U.S.C. § 1692c. _Id._ at *6, FN. 2. _Mendus_ **[*11]** involved a conflict between the Oklahoma Pleading Code and the FDCPA so as to remove the 20 day answer period when no prior notification had been given to the debtor. The Court noted that the issue arisies only when the petition and summons constitute the initial contact by the creditor with the consumer debtor. _Id._ at *7, FN. 9. _Mendus_ did not involve a post-judgment proceeding or a statute that the State Supreme Courts has declined to extend to attorneys engaged in the practice of law. The Oklahoma Court of Appeals concluded that the defendant's summons giving _Mendus_ 30 days to respond when Oklahoma law provided for only 20 days was confusing and violated the FDCPA.

Because attorneys engaged in the practice of law are not covered by the Illinois' Consumer Fraud and Deceptive Practices Act, the provisions plaintiff relies upon cannot be applied and/or incorporated into the FDCPA for an attorneys' conduct by virtue of section 15 U.S.C. § 1692n. Hence, plaintiff's third argument is insufficient as a matter of law. Therefore, Count II of plaintiff's complaint is dismissed with prejudice.

As to Count V, the Gertler firm is not dismissed. Plaintiff **[*12]** has alleged that the wage deduction summons disclosed a false creditor namely American Banco. If discovery reveals that American Banco is a false creditor then possibly a violation of the FDCPA will be found. The FDCPA provides in relevant part as follows:

An action to enforce liability created by this title may be brought in any appropriate United States district court without regard to the amount in

Case: 1:01-cv-02959 Document #: 1 Filed: 04/25/01 Page 55 of 58 PageID #:55

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 5827

Page 6 of 6

controversy, or in any other court of competent jurisdiction, within one year from the date on which the violations occurs.

15 U.S.C. § 1692k(d). Civil liability.

Here, it is unclear as to when the summons was served. Discovery will establish this question of fact. Therefore, defendants' motion to dismiss Count V is denied.

## CONCLUSION

For the reasons set forth above defendant's motion to dismiss is granted in part and denied in part. (# 7-1).

## SO ORDERED

## ENTERED: 3/17/00

## HON. RONALD A. GUZMAN

## United States Judge

Service: **LEXSEE®**
Citation: **2000 U.S. Dist. LEXIS 5827**
View: Full
Date/Time: Tuesday, April 24, 2001 - 10:42 PM EDT

About LEXIS-NEXIS | Terms and Conditions

Copyright © 2001 LEXIS-NEXIS Group. All rights reserved.

**CERTIFICATE OF SERVICE**

I, Thomas A. Doyle, hereby certify that I caused a copy of the foregoing document

to be served upon the party listed below by messenger service before 5 p.m. on April 25,

2001:

Ronald Gertzman
205 West Randolph Street
Suite 401
Chicago, Illinois  60606

_____
Thomas A. Doyle

Civil Cover Sheet

Page 1 of 1



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### Civil Cover Sheet

01C 2959

JUDGE HOLDERMAN

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

MAGISTRATE JUDGE ROSEMOND

| | |
|---|---|
| **Plaintiff(s): Wafeek Shalabi** | **Defendant(s): The Huntington Mortgage Company, The Huntington National Bank, and Pierce & Associates, PC** |
| County of Residence: Cook | County of Residence: Franklin (Ohio) |
| Plaintiff's Atty: Ronald Gertzman<br>Law Offices of Ronald Gertzman<br>205 West Randolph, Suite 401<br>Chicago, Illinois 60606<br>312.236.3850 | Defendant's Atty: **DOCKETED** **APR 2 5 2001**<br>Timothy J. Carey<br>LOVELLS<br>330 North Wabash Avenue, Suite 1900 Chicago, Illinois 60611<br>312.832.4400 |

**II. Basis of Jurisdiction:** 4. Diversity (complete item III)

**III. Citizenship of Principle Parties**
**(Diversity Cases Only)**

Plaintiff:-1 Citizen of This State

Defendant:-5 Non IL corp and Principal place of Business outside IL

**IV. Origin :** 2. Removed From State Court

**V. Nature of Suit:** 370 Other Fraud

**VI.Cause of Action:** This is a case that has been removed from State Court. The Plaintiff is alleging fraud, breach of fiduciary duty, and violation of the Illinois Consumer Fraud Act. The basis for jurisdiction on removal is diversity jurisdiction (28 U.S.C. 1332). One of the Defendants (Pierce & Associates PC) has been fraudulently joined.

**VII. Requested in Complaint**

Class Action: **No**

Dollar Demand: **$112,000**

Jury Demand: **Yes**

**VIII.** This case **IS** a refiling of a previously dismissed case. (If yes case number **99 CV 4971** by Judge **Moran** )

Signature:

Date: April 25, 2001

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.** Revised: 06/28/00

NOTE: When the print dialogue box appears, be sure to uncheck the Annotations option.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
### Eastern Division

**DOCKETED**

APR 2 5 2001



Double click on question mark for appearance form instructions

In the Matter of

Wafeek Shalabi,
                    Plaintiff,
v.
The Huntington National Bank, The Huntington Mortgage Company,
and Pierce & Associates, PC,
                    Defendants.

Case Number:



01C 2959

## APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Defendant The Huntington National Bank and Defendant The Huntington Mortgage Company

JUDGE HOLDERMAN

MAGISTRATE JUDGE ROSEMOND

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Timothy J. Carey | NAME Thomas A. Doyle |
| FIRM LOVELLS | FIRM LOVELLS |
| STREET ADDRESS 330 North Wabash, Suite 1900 | STREET ADDRESS 330 North Wabash, Suite 1900 |
| CITY/STATE/ZIP Chicago, Illinois 60611 | CITY/STATE/ZIP Chicago, Illinois 60611 |
| TELEPHONE NUMBER (312) 832-4400 | TELEPHONE NUMBER (312) 832-4400 |
| IDENTIFICATION NUMBER 06181681 (Illinois) | IDENTIFICATION NUMBER 6204138 (Illinois) |
| MEMBER OF TRIAL BAR? YES ✔ NO | MEMBER OF TRIAL BAR? YES ✔ NO |
| TRIAL ATTORNEY? YES ✔ NO | TRIAL ATTORNEY? YES ✔ NO |
| | DESIGNATED AS LOCAL COUNSEL? YES NO ✔ |

FILED-EU4
01 APR 25 PM 2:18
U.S. CLERK
DISTRICT COURT

| (C) | (D) |
|---|---|
| SIGNATURE Eric J. Gribbin | SIGNATURE |
| NAME Eric J. Gribbin | NAME |
| FIRM LOVELLS | FIRM |
| STREET ADDRESS 330 North Wabash, Suite 1900 | STREET ADDRESS |
| CITY/STATE/ZIP Chicago, Illinois 60611 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (312) 832-4400 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER 62711220 (Illinois) | IDENTIFICATION NUMBER |
| MEMBER OF TRIAL BAR? YES NO ✔ | MEMBER OF TRIAL BAR? YES NO |
| TRIAL ATTORNEY? YES ✔ NO | TRIAL ATTORNEY? YES NO |
| DESIGNATED AS LOCAL COUNSEL? YES NO ✔ | DESIGNATED AS LOCAL COUNSEL? YES NO |

1-3